WINIFRED BRADFIELD, Adm'r of the Estate of Richard Bradfield, Deceased, Plaintiff-Appellee, v. ILLINOIS CENTRAL GULF RAILROAD COMPANY, Defendant-Appellant.

Fifth District   No. 5—84—0256

Opinion filed August 30, 1985..

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Terry N. Brown and Charles L. Joley, of counsel), for appellant.

Jerome Mirza & Associates, Ltd., of Bloomington, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This appeal arises from a railroad crossing accident that occurred on the morning of January 28, 1978, when a vehicle driven by Richard Bradfield was struck by a train near Lostant. The collision resulted in Bradfield's death. The circuit court of Madison County entered judgment on a jury verdict in the amount of $175,000 in favor of plaintiff, Winifred Bradfield, administrator of the estate of Richard Bradfield. Defendant, Illinois Central Gulf Railroad Company, appeals. We affirm.

The facts are as follows:

At approximately 8 a.m. on January 23, 1978, Mr. Bradfield was traveling east on a road perpendicular to the railway, approximately one-quarter mile south of the town of Lostant. The weather was clear and the sun was shining. The rural crossing was protected only by a railroad "crossbuck" sign.

The train that struck Mr. Bradfield's truck consisted of a snow-plow, an engine, one car, and a caboose, and was moving at approximately 20 to 22 miles per hour in an attempt to clear snow from the tracks.

A crew member of the train, Burnell Brown, testified that there was a headlight on the front of the snow-plow and two headlights on the front of the engine, one of which was a strobe light, and that the lights were on at the time of the accident. Mr. Brown and another crewmember, Timothy Martz, both testified that the train had passed a whistle mark one-quarter of a mile south of the crossing where the accident occurred and that from that point they rang the bell and sounded the whistle until they reached the crossing. Mr. Brown explained that while plowing snow it is essential to frequently sound the whistle in order to keep it from clogging with snow.

However, the testimony of the railroad train crew that the required crossing whistle pattern (two long blasts, then a short blast, and then another long blast) was blown at the quarter-mile mark before the crossing was contradicted by Winifred Bradfield, the decedent's widow. The Bradfield home was next to the railroad tracks where the accident occurred. Mrs. Bradfield testified that she heard the train coming down the tracks and a frantic blow of the whistle immediately before the crash.

The trial court, over objection of defendant, permitted plaintiff to introduce the testimony of Winifred Bradfield and Jeffrey Bradfield, decedent's son, that on other occasions, prior to the occurrence in question, other train crews of the Illinois Central Gulf Railroad had failed to sound a whistle or horn when approaching the crossing in question. Instead, they would blow their whistle after they went over the crossing as they were entering the town of Lostant. (The required train whistling procedure is for the whistle to be blown continuously for approximately one-quarter mile from a crossing until the train has gone through the crossing.)

The trial court also allowed plaintiff's motion to bar the testimony of Thomas Berns, a registered professional engineer, regarding measurements of sight distances at the crossing because defendant had failed to disclose Berns' identity until the commencement of trial.

■ Defendant first contends that the court erred when it allowed decedent's wife and son to testify that on other occasions, prior to the occurrence in question, other train crews of the Illinois Central Gulf Railroad Company had failed to sound a whistle or horn when approaching the crossing in question.

We agree with defendant that our current rule regarding "habit"

testimony is that it is permitted in wrongful death cases where there were no eyewitnesses to the accident. (*Gardner v. Geraghty* (1981), 98 Ill. App. 3d 10, 15, 423 N.E.2d 1321, 1325.) However, this view has been criticized because its premise is the "superior" reliability of eyewitness testimony. (For an exhaustive discussion of the trend to remove the requirement that there be no eyewitnesses before a habit of specific conduct is introduced into evidence see *Glatt v. Feist* (N.D. 1968), 156 N.W.2d 819.)

Louisell, Kaplan, and Waltz, citing Lilly, An Introduction to the Laws of Evidence 121-24 (1978), aptly state: "The case for habit evidence especially is strong when the eyewitness is one of the parties (or identified with one of the parties) and evidence of habit is offered by the adversary." (Louisell, Kaplan & Waltz, Cases & Materials on Evidence 337 (4th ed. 1981).) Such is the case at hand. There were no impartial witnesses to the accident. The eyewitnesses were all employees of the railroad and the evidence of habit was offered by the Bradfields.

The court in *Glatt v. Feist* commented persuasively upon circumstances similar to those in the case at bar:

> "In *State v. Manchester and Lawrance Railroad* (1873), 52 N.H. 528, a suit was prosecuted for negligent homicide which occurred upon a railroad crossing and the evidence was in conflict as to whether the engineer and fireman of the railroad sounded the whistle or rang the bell. The court held that testimony was admissible as to the same train run by the same engineer and fireman having sometimes passed the train crossing without sounding the whistle or ringing the bell, as tending to show the same men would be more likely to have neglected performance of these duties upon the occasion in question." *Glatt v. Feist* (N.D. 1968), 156 N.W.2d 819, 826-27.

Although we are not dealing with the habits of specific individuals but with the routine practice of an organization, the same shortcomings of the "eyewitness" requirement to the admissibility of habit evidence hold true.

It is well settled that the law of evidence is a constantly expanding phase of our jurisprudence, and its rules are molded and applied according to the needs of justice, to meet changes made by the progress of society. (29 Am. Jur. 2d *Evidence* sec. 1 (1967).) Rules of evidence have been adopted, theoretically at least, because they are believed to be best calculated to elicit and establish the truth, and obviously, what is best adapted to produce this effect does not depend on the character or the jurisdiction of the judicial tribunals before

which, or the form of the action or proceeding in which, the question arises. (29 Am. Jur. 2d *Evidence* sec. 5 (1967).) The emerging view is that habit evidence is always admissible to prove the conduct of a person or business organization and is embodied in the following provision of the Federal Rules of Evidence:

"Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Fed. R. Evid. 406.

We note that this rule expressly rejects the eyewitness requirements and find that this is the better rule, and hereby adopt it. See McCormick, Evidence sec. 195, at 463-64 (2d ed. 1972).

In any event, even if the Bradfields' testimony regarding the practice of the railroad train crews was error, it is not the policy of the appellate court to reverse a jury verdict merely because error has been committed. (See *Joseph Taylor Coal Co. v. Dawes* (1906), 220 Ill. 145, 147-48, 77 N.E. 131, 132.) Generally, a reviewing court will not reverse a jury verdict because of an error in the admission of evidence unless it appears that there was a denial of real justice. (*People v. West* (1981), 102 Ill. App. 3d 50, 53-54, 429 N.E.2d 599, 603.) The objective of a reviewing court is not to determine whether the record is totally free of error but whether any error occurred that substantially prejudiced a party and affected the outcome below. (*Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 1019, 388 N.E.2d 770, 777.) We find no substantial prejudice occurred in this case.

The record reveals that other competent evidence supported the jury's verdict. Mrs. Bradfield testified that she heard the train coming down the tracks, heard one frantic blow of the whistle, and then a crash. The aforementioned testimony contradicts the testimony of the train crew members that they blew the required whistle pattern of two long blasts, then a short blast, and then another long blast. It is well settled that the jury has the function of resolving conflicts in evidence and the credibility of witnesses. (*Dempski v. Dempski* (1963), 27 Ill. 2d 69, 73, 187 N.E.2d 734, 736; *Dowler v. New York, Chicago & St. Louis R.R. Co.* (1955), 5 Ill. 2d 125, 130, 125 N.E.2d 41, 45.) Thus there was sufficient evidence to support the jury's verdict.

■ The last issue raised by defendant is whether the trial court erred when it prohibited the testimony of Thomas Berns.

It is well settled that the question of whether or not a party has properly answered interrogatories is within the discretion of the trial

court. The decision will not be disturbed unless that discretion is improperly exercised. (*Roewe v. Lombardo* (1966), 76 Ill. App. 2d 164, 176, 221 N.E.2d 521, 527.) Some of the criteria that should be weighed by a court in determining that a sanction should be employed are (1) surprise to the opponent, (2) the good faith of the party offering the evidence, (3) equal opportunity and access of the opponent to the evidence before trial, and (4) prejudice to the opponent. (*Buehler v. Whalen* (1976), 41 Ill. App. 3d 446, 458, 355 N.E.2d 99, 110, *aff'd* (1977), 70 Ill. 2d 51, 374 N.E.2d 460.) However, the burden is on the appellant to affirmatively show an abuse of discretion. *Bicek v. Quitter* (1976), 38 Ill. App. 3d 1027, 1030, 350 N.E.2d 125, 127.

■ After a thorough examination of the record, we conclude that the trial judge did not exceed the proper limits of his judicial discretion. This case was filed in January 1980. It was tried on January 16, 1984. Throughout this time, defendant did not reveal Berns' identity as a potential witness. Defendant answered written interrogatories in 1981 and again in January 1984, mere days before the trial. However, the name of Thomas Berns as a witness was not disclosed until the first day of trial. In light of these facts, the appellant has not shown that the trial court did indeed abuse its discretion. Contra, *Henderson v. Illinois Central Gulf R.R. Co.* (1983), 114 Ill. App. 3d 754, 757, 449 N.E.2d 942, 944.

■ In any event, Mr. Berns was merely going to testify regarding his measurements of sight distances at the railroad crossing. Trooper Louis Baker had already testified regarding the approximate sight distances at the railroad crossing. It is well settled that expert opinions are not admitted on matters of common knowledge unless the subject is difficult to comprehend or explain. (*Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 99, 382 N.E.2d 1201, 1205.) Thus, we find the trial judge rightly prohibited Mr. Berns from testifying.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KARNS and HARRISON, JJ., concur.