WILLIAM KENNER, Plaintiff-Appellant, v. NORTHERN ILLINOIS MEDICAL CENTER, formerly McHenry Hospital, *et al.*, Defendants-Appellees.

Second District   No. 2—87—0033

Opinion filed December 29, 1987.

Thomas L. Ruth, Jr., & Associates, of Barrington (Thomas L. Ruth, Jr., of counsel), for appellant.

Hugh C. Griffin and Diane I. Jennings, both of Lord, Bissell & Brook, of Chicago (Jeffry S. Spears, of counsel), for appellee Northern Illinois Medical Center.

Paul A. Krieg, of Holmstrom & Green, P.C., of Woodstock (Tom E. Rausch, of counsel), for appellee E. F. Wilt.

Pretzel & Stouffer, Chartered, of Chicago (Brian T. Henry, of counsel), for appellee Gregory Eckstein.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Dr. William Kenner, appeals from a trial court order entering summary judgment in favor of defendants, McHenry County Hospital (now known as Northern Illinois Medical Center, hereinafter NIMC), Dr. E. F. Wilt, and Dr. Gregory Eckstein, on counts II through V, VII through X, and XII through XV of plaintiff's fourth amended complaint. Counts I, VI, XI, and XVI were voluntarily nonsuited by plaintiff. On appeal, plaintiff contends there were genuine issues of material fact which precluded the trial court from entering summary judgment in defendants' favor.

The following facts are not in dispute. On March 21, 1984, plaintiff, an 86-year-old retired physician, entered NIMC for treatment of a fractured ankle. When plaintiff was admitted to the hospital, plaintiff's wife, Mrs. Dolores Kenner, a licensed practical nurse, signed a form on his behalf entitled "Authorization and consent upon admission to hospital" that stated in pertinent part:

"I understand that my admission to this hospital is indicated

because of my condition. I voluntarily authorize and consent to the customary examinations, tests, and procedures performed on hospital patients in my condition and to routine medical treatment ordered by my physician(s)."

Dr. Wilt was plaintiff's attending physician.

On the day plaintiff was admitted, surgery was performed by Dr. Elstrom. Prior to surgery, Mrs. Kenner, again on behalf of plaintiff, signed a form entitled "Authorization for surgeon to operate and Administration of Anesthetic." This form provided in relevant part:

"I, William Kenner, *** authorize Dr. Elstrom (and whomever he may designate as assistant(s)) to administer such treatment *** as is necessary, and to perform the following operation: *** and such additional operations or procedures as are considered therapeutically necessary on the basis of finding during the course of said operation."

On March 25, Nurse Rink, believing that plaintiff might injure his recently repaired fracture, attempted to contact Dr. Wilt regarding plaintiff's repeated attempts to get out of bed. Rink called Dr. Wilt's answering service at approximately 10 p.m. and was advised that Dr. Eckstein was covering for Dr. Wilt that evening. Rink called Dr. Eckstein and advised him of the situation. Dr. Eckstein, who had no prior contact with plaintiff, ordered Valium every four hours as needed and the use of soft restraints on one arm and one leg as necessary. Valium was subsequently administered by another nurse. On April 2, 1984, plaintiff checked out of NIMC against the advice of his physicians.

In count II of his fourth amended complaint, plaintiff seeks actual damages from NIMC for false imprisonment. In pertinent part, plaintiff alleges that NIMC, through its agents and employees, intentionally injected Valium into plaintiff without his consent causing plaintiff to lose control of the use and free movement of his body; NIMC knew the Valium was administered to deprive plaintiff of control of his body and was not intended for medical treatment; and the failure of the agents and employees of NIMC to consult with the doctors authorized to treat plaintiff subjected plaintiff to an unreasonable use of force. Plaintiff requests actual damages in excess of $15,000 for the grave personal damages, humiliation and mental anguish he suffered as a consequence of NIMC's intentional acts restraining his freedom of movement. In count III, plaintiff prays for punitive damages alleging that NIMC's conduct outlined in count II was done wilfully and with complete indifference and disregard to the consequences of the acts. In count IV, plaintiff seeks actual damages from NIMC for battery based on the allegedly unauthorized injection of Valium. Count V

seeks punitive damages for this alleged wilful misconduct.

In count VII, plaintiff seeks actual damages from Dr. Wilt for false imprisonment. Plaintiff alleges in relevant part that Dr. Wilt permitted Dr. Eckstein, who did not have the consent or authority to render medical treatment to plaintiff, to interfere with plaintiff's treatment; Dr. Eckstein ordered Valium not as medical treatment but to render plaintiff unconscious and deprive him of control of his body, and also ordered leg and wrist restraints on plaintiff; and Dr. Wilt, through his agents the hospital personnel, intentionally administered Valium to plaintiff and physically restrained plaintiff to his bed without consent and against his will. Plaintiff requests actual damages in excess of $15,000 for the grave personal damages, humiliation and mental anguish he suffered as a consequence of Dr. Wilt's intentional acts restraining his freedom of movement. In count VIII, plaintiff alleges Dr. Wilt's conduct as described in count VII was done wilfully and requested punitive damages. In count IX, plaintiff seeks actual damages for the injection of Valium on a battery theory. Count X requests punitive damages for this alleged wilful misconduct.

Counts XII through XV were directed at Dr. Eckstein and reallege the conduct purportedly rendering Dr. Eckstein liable for actual and punitive damages for false imprisonment and battery.

Each defendant moved for summary judgment on the counts directed at them. In its memorandum in support of summary judgment, NIMC first argued the claims were without merit because plaintiff gave written and implied consent to the treatment administered by Dr. Eckstein by virtue of the consent form signed at admission and the accepted custom and practice in the profession. NIMC next argued the nursing staff did not act with the requisite intent because it acted only upon order of the plaintiff's physician and in reliance on the on-call schedule. Third, NIMC contended it could not be held vicariously liable for the acts or omissions of independent physicians. Finally, NIMC argued that plaintiff was not entitled to punitive damages. Dr. Wilt argued plaintiff had consented to the treatment in question, and he could not be vicariously liable for the acts of the hospital employees because they were implementing purely hospital procedure. Dr. Eckstein argued plaintiff consented to the treatment and punitive damages were unwarranted. As support for these contentions, defendants relied on the consent forms signed by Mrs. Kenner, an affidavit by Dr. Baxamusa stating the treatment ordered by Dr. Eckstein was appropriate under the circumstances, and excerpts from the depositions of Dr. Eckstein, Dr. Wilt, Dr. Lorenc, Nurse Rink, plaintiff, and Mrs. Kenner.

At his deposition, Dr. Eckstein stated he had not previously treated plaintiff and had not discussed plaintiff's condition with Dr. Wilt. Based on the representation of plaintiff's attending nurse regarding plaintiff's condition and his prior history, Dr. Eckstein prescribed Valium for purposes of sedation and to help alleviate agitation, and also ordered restraints administered on an as necessary basis. Dr. Eckstein claimed his authority to treat plaintiff arose from the on-call arrangement he had with Dr. Wilt which was verbally conveyed to the hospital. Dr. Eckstein explained the purpose of the arrangement, which also included Dr. Lorenc, was to permit the doctors to have time off without being concerned about having to treat their patients if the need arose. Under the arrangement, the physician on call is responsible for treating the other doctors' patients as required. Dr. Eckstein distributed a brochure to his new patients explaining the on-call arrangement. Dr. Eckstein was not aware whether Dr. Wilt notified his patients of the on-call arrangement. Nor was Dr. Eckstein aware whether the hospital notified plaintiff of the on-call arrangement.

Dr. Wilt stated in deposition that Dr. Eckstein had authority to leave orders for his patients and those of Dr. Lorenc under a standard hospital rotation call under which the doctors cover for each other every third day. Dr. Wilt stated this arrangement was recognized and spelled out on the doctors' schedules, which were given to the nurses at the hospital. Dr. Wilt claimed the on-call arrangement provided clear-cut authority and was well recognized by NIMC.

The pertinent portions of Dr. Lorenc's deposition indicated that Dr. Wilt and Dr. Lorenc were independent practitioners who shared an office building, a receptionist, and a secretary. Dr. Lorenc explained their professional relationship involved sharing "a call" via a special arrangement in which one doctor would cover for the other. Dr. Lorenc added that Dr. Eckstein was also involved in the arrangement. Dr. Lorenc explained the arrangement was simply an accommodation and the doctors did not share in fees for taking calls and there was no written agreement. According to Dr. Lorenc, the hospital was informed verbally of the arrangement, and the emergency room received a monthly notice indicating which doctor was on call for each day of the month. After 5 p.m., nurses were instructed to call the treating doctor's office to ascertain which doctor was on call. Dr. Lorenc added the monthly notice was not reflected on any notes or orders of the patient.

Nurse Rink stated in her deposition that nurses ascertain the treating doctor from the patient's chart. Nurse Rink stated another doctor could treat a patient if permission was given by the treating

physician. In response to a question requesting how it was determined a particular doctor had permission, Nurse Rink stated that physicians cover for each other on their days off. Rink ascertained that Dr. Eckstein was covering for Dr. Wilt from Dr. Wilt's answering service. Rink did not know if there were any pertinent hospital regulations involved.

The deposition testimony of plaintiff and Mrs. Kenner relied on by defendants indicated the Kenners were familiar with on-call arrangements.

Plaintiff responded to the summary judgment motions by arguing that consent was a fact question that should be determined by the jury. Plaintiff asserted there were several material issues of fact regarding the consent question. First, plaintiff relied on the absence of any provision in the general consent form authorizing Dr. Eckstein to render treatment to plaintiff. Plaintiff also relied on his deposition testimony indicating that he was not informed at any time that Dr. Eckstein would be consulted if Dr. Wilt was unavailable. Plaintiff also found support for his position in various provisions contained in the NIMC rules and regulations. Plaintiff finally claimed the depositions revealed there was confusion and conflict surrounding the on-call arrangement.

After a hearing on the summary judgment motions, the court issued written findings in support of its ruling in favor of defendants. The court found there was clearly consent for treatment by Dr. Elstrom, Dr. Wilt, and Dr. Lorenc. Further, Dr. Eckstein was on call covering for the treating physician in an emergency situation, and the patient's consent to treatment covered Dr. Eckstein because Dr. Eckstein was assisting the treating physician. As support for its conclusion, the court relied on *Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1. *Guebard* addressed the scope of a consent for surgery form authorizing Dr. Jabaay and three other doctors and such assistants as are assigned to the case to perform a certain surgery. The court first referred to a number of decisions holding that whether a signed consent form constituted effective consent to treatment was a question of fact for the jury. The court found, however, that since an assistant was the primary performer of the surgery, it would not appear a jury could properly decide that plaintiff had been informed and consented to the extent of the assistant's participation. The court stated the authorities were uniform in holding that surgery performed by an unauthorized surgeon is sufficient grounds for a battery claim. However, since the plaintiff in *Guebard* had withdrawn the count for battery, the court concluded there was no remedy available. *Guebard*, 117 Ill. App. 3d at 5-8.

On appeal, plaintiff contends summary judgment in favor of defendants was improper because consent is a question of fact for the jury and several material questions of fact existed. The defendants again argue that plaintiff either expressly or impliedly consented to the treatment by Dr. Eckstein. In addition, NIMC again raises the three alternative grounds for granting NIMC summary judgment which were included in its memorandum in support of summary judgment. Dr. Wilt also contends summary judgment in his favor was proper because he cannot be held vicariously liable for the acts of Dr. Eckstein and the hospital personnel. Dr. Wilt further argues that punitive damages were unwarranted.

■■■ Summary judgment is properly granted only where the pleadings, exhibits, depositions, admissions and affidavits on file show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005; *Schwaner v. Belvidere Medical Building Partnership* (1987), 155 Ill. App. 3d 976, 983.) Because summary judgment is a drastic measure, it should be granted only when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) In determining whether a trial court properly granted summary judgment, a court of review must consider all grounds urged and facts revealed in the record to determine if a genuine issue of material fact exists and, if none does, whether the moving party was entitled to summary judgment as a matter of law. (*Schwaner*, 155 Ill. App. 3d at 983; *Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App. 3d 752, 754.) An order entering summary judgment will be reversed if the reviewing court determines there is a genuine issue of material fact. *Bellmer*, 140 Ill. App. 3d at 754; *Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 323.

■■ We first address whether a genuine issue of material fact existed regarding plaintiff's consent to treatment by Dr. Eckstein. The consent form signed at the time of plaintiff's admission gave authorization for "routine treatment ordered by my physician(s)." No mention was made of an on-call arrangement and there was no indication that treatment would be rendered by physicians other than those agreed upon by the patient. These circumstances preclude a conclusive finding that plaintiff expressly consented to treatment by Dr. Eckstein. We note at this juncture that the surgical consent form has no relevance here. That form, which mentioned assistants, was clearly confined to surgically related procedures. The treatment at issue here occurred four days after surgery and does not appear to have been related to further surgical treatment arising from the ini-

tial operation. We find nothing in the record demonstrating that plaintiff expressly consented to treatment by Dr. Eckstein.

■ Furthermore, we do not believe it is clear and free from doubt that plaintiff impliedly consented to treatment by Dr. Eckstein on account of the on-call arrangement. Granted, plaintiff and his wife were aware of the existence of on-call arrangements, and their utility is not disputed. However, plaintiff stated in deposition that he had not been informed of or agreed to such an arrangement. In addition, the hospital regulations do not explicitly recognize such arrangements. Because of these considerations and the absence of adequate support in the record, defendants in our view failed to conclusively establish that on-call arrangements are such a standard custom and practice that a patient impliedly consents to treatment by any doctor involved in such an arrangement.

■ Consent to medical treatment by a particular physician is normally a question of fact to be determined at trial. (*Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 6; see *Mink v. University of Chicago* (N.D. Ill. 1978), 460 F. Supp. 713, 718.) In *Guebard,* as indicated above, the court concluded there was no question of fact. Such, however, is not the case here. The mere existence and cognizance of on-call arrangements is an insufficient factual basis in our opinion to determine unequivocally that plaintiff expressly or impliedly consented to treatment by Dr. Eckstein. Therefore, the entry of summary judgment in favor of defendants on the basis that plaintiff consented to the treatment was improper.

■ Having determined that summary judgment was improperly granted on the basis of consent, we next address the alternative grounds for summary judgment raised by the defendants. NIMC maintains it was entitled to summary judgment on all counts against it because: (1) the nursing staff justifiably relied on the on-call arrangement and therefore did not act with the intent to constitute a battery or false imprisonment; and (2) NIMC cannot be vicariously liable for acts or omissions of independent physicians for failure to obtain consent. NIMC's first alternative argument is unpersuasive because whether the nursing staff justifiably relied on the on-call arrangement raises a fact question regarding the on-call arrangement which, from our review of the record, is not free and clear of doubt.

In support of its second alternative argument, NIMC relies on *Pickle v. Curns* (1982), 106 Ill. App. 3d 734. In *Pickle,* the plaintiff alleged the hospital where she was treated was negligent for failing to advise her of several of the risks attendant to a therapeutic procedure. Plaintiff alleged there was a duty on the part of the hospital to

obtain her informed consent. In upholding the dismissal of this count of plaintiff's complaint, the court stated: "[I]nforming a patient of a procedure in order that he might make a decision to give or withhold his consent to it is the duty of the patient's physician." (*Pickle*, 106 Ill. App. 3d at 738.) While the court recognized the hospital owed a duty of care to the patient independent of the duty owed by the physician, it determined the responsibility to obtain informed consent was with the treating physician on account of the special relationship between doctor and patient. *Pickle*, 106 Ill. App. 3d at 738.

■ Here, plaintiff's complaint against the hospital is not based on want of informed consent; rather, it is predicated on the hospital's alleged failure to ascertain whether Dr. Eckstein was authorized to treat plaintiff. We believe a hospital's duty of care to a patient includes the duty to ensure, prior to the hospital nurse's carrying out the instructions of a doctor, that the doctor is authorized to treat that patient. The existence of this duty is manifest from the consent form signed on behalf of plaintiff at the time he was admitted to the hospital. Whether NIMC satisfied this duty once again is dependent on whether plaintiff consented to treatment by Dr. Eckstein, which in turn is dependent on unresolved questions concerning the on-call arrangement. Therefore, summary judgment based on NIMC's second alternative argument is inappropriate.

■ Dr. Wilt alternatively contends summary judgment in his favor was appropriate because he cannot be held vicariously liable for the alleged intentional and malicious acts of Dr. Eckstein and the hospital personnel. Dr. Wilt correctly notes that plaintiff alleged that Dr. Eckstein and the hospital personnel did not act with medical treatment in mind. However, proof of this allegation is not necessary to prove battery or false imprisonment. Rather, plaintiff need only prove that the treatment rendered was unauthorized. (*Mink*, 460 F. Supp. at 718.) This question, of course, depends on the scope of the on-call arrangement, which we have already determined is not clear and free from doubt from the record presented here. Dr. Wilt's contention that he is not vicariously liable because there was not an employer/employee relationship is unpersuasive. We believe a question of fact exists regarding the relationship of the doctors as it pertains to the on-call arrangement. Therefore, Dr. Wilt's alternative argument does not warrant the entry of summary judgment against plaintiff.

The final matter for our consideration is whether summary judgment was properly granted in favor of defendants on the punitive damages counts. In his complaint, plaintiff alleged the Valium and restraints were administered wilfully and not for medical treatment

purposes. Defendants moved for summary judgment on the punitive damages counts contending the alleged tortious conduct was not of such an extreme or outrageous nature as to warrant the imposition of punitive damages. Support for defendants' contentions included Dr. Baxamusa's affidavit stating the treatment rendered was reasonable under the circumstances, and the admissions of plaintiff and Mrs. Kenner in deposition that neither had reason to believe the Valium or restraints were administered out of spite, ill will, or malice toward plaintiff. Plaintiff did not present any evidence in response.

■■ Punitive damages may be recovered when the wrongful act complained of is characterized by fraud, malice, oppression, willfulness, or wantonness. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186.) Whether punitive damages may be assessed is a question of law. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 87.) A party responding to a motion for summary judgment is not required to prove its case; however, a sufficient factual basis entitling the party to recover under applicable law must be presented. (*Johnson v. Sumner* (1987), 160 Ill. App. 3d 173, 176.) Here, plaintiff, in response to defendants' summary judgment motions, failed to present any factual basis supporting his allegations that defendants acted wilfully. This is not surprising since plaintiff's testimony in deposition seems to belie the allegations in his complaint. In view of the complete lack of factual support for recovering punitive damages, summary judgment in favor of defendants on the punitive damages counts of the complaint was proper.

For the foregoing reasons, the circuit court's entry of summary judgment in favor of defendants on the punitive damages counts is affirmed. The entry of summary judgment on the remaining counts is reversed, and the cause is remanded.

Affirmed in part; reversed in part and remanded.

WOODWARD and UNVERZAGT, JJ., concur.