FLORENCE T. HUELSMANN *et al.*, Plaintiffs-Appellees, v. WALLACE P. BERKOWITZ *et al.*, Defendants-Appellants (St. Elizabeth Hospital, Defendant).

Fifth District   No. 5—88—0768

Opinion filed March 13, 1991.

807

GOLDENHERSH, J., concurring in part and dissenting in part.

Appeal from the Circuit Court of St. Clair County; the Hon. Roger M. Scrivner, Judge, presiding.

Theodore J. MacDonald, Jr., and J. Todd Hayes, both of Burroughs, Simpson, Hepler, Broom & MacDonald, of Edwardsville, for appellees.

JUSTICE HOWERTON delivered the opinion of the court:

We affirm the judgment entered on the verdict of a St. Clair County jury that found defendant liable for medical malpractice, awarding plaintiff $79,975.80 in actual damages, but we reverse the judgment for $15,000 in punitive damages.

We hold that the circuit court properly imposed as a sanction for violating Supreme Court Rule 220 (134 Ill. 2d R. 220) an order that barred defendant's expert from testifying, and we hold also that comments made during *voir dire* were not sufficient to cause the entire panel of veniremen to be discharged. However, we further hold that

the evidence did not support the submission of the issue of punitive damages to the jury.

Defendant, Dr. Wallace Berkowitz, performed a tonsillectomy on plaintiff, Florence Huelsmann.

After plaintiff returned home, she had several profuse bleeding spells.

During one middle-of-the-night spell, her husband called defendant.

According to plaintiff's husband, defendant advised plaintiff to gargle with hydrogen peroxide, but did not advise her to go directly to the hospital.

Defendant contradicted this, however, and testified that he told plaintiff's husband to take plaintiff to the hospital, and that defendant waited up two hours for the emergency room personnel to call him, but when no call came, he went back to sleep.

Defendant left on vacation the next day.

Several days later, plaintiff was taken to a hospital by her husband. A blood clot was removed from her throat and her throat was treated to prevent bleeding. She was given a shot to prevent shock and was transfused with two units of blood.

She returned home.

Again, she awoke, bleeding. This time, she went to a different hospital. She was admitted and a large ulcer was found where her tonsils once had been.

Treated, the ulcer healed and the bleeding stopped.

Post-bleeding, she was diagnosed as having a dysthymic disorder, a depression due to her profuse bleeding.

## I. RULE 220

Plaintiff produced an expert witness who testified that a patient who starts bleeding after a tonsillectomy should be taken to a hospital emergency room and examined immediately.

On the other hand, Dr. Ingram, defendant's expert, was barred from testifying pursuant to Supreme Court Rule 220(c) (134 Ill. 2d R. 220(c)) because defense counsel failed to answer sufficiently plaintiff's Rule 220 interrogatories.

This is the interrogatory and the answer.

> *"Question*: State the conclusions and opinions and bases therefor of each testifying expert you expect to call at trial.
>
> *Answer*: Based upon Dr. Ingram's education and training and medical authorities, it will be his opinion that the care and treatment rendered by Dr. Berkowitz and his follow-up care

thereafter was appropriate and did not deviate from accepted medical standards."

Did this answer comply with Rule 220(c)?

We hold that it did not.

■ The question of whether a party has properly answered interrogatories is within the discretion of the trial court and will not be disturbed unless that discretion is improperly exercised. *Clay v. McCarthy* (1979), 73 Ill. App. 3d 462, 392 N.E.2d 693; *Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, 484 N.E.2d 365.

■ Supreme Court Rule 220(c)(1) requires that a party retaining or employing an expert witness shall be required to state the subject matter on which the expert is expected to testify and his conclusions, opinions and bases therefore, as well as his qualifications. 134 Ill. 2d R. 220(c)(1).

Defendant argues that the committee comments to Rule 220 (134 Ill. 2d R. 220, Committee Comments, par. (c)) state that the answer is meant to be *basic* and that further modes of discovery, such as depositions, were contemplated by Rule 220.

■ We acknowledge that a Rule 220 answer is meant to be basic; nevertheless, defendant's answer was *too* basic.

No case has been found that deals with the degree of specificity required of an answer to a Rule 220(c) interrogatory.

We look, therefore, to other cases that deal with the specificity of answers to other types of interrogatories in order to determine the general spirit of the disclosure rules.

*Singer v. Treat* (1986), 145 Ill. App. 3d 585, 495 N.E.2d 1264, dealt with answers to interrogatories that had asked: (a) the names and addresses of treating physicians; (b) the names of those who took X rays; (c) if plaintiff had been a patient of a hospital; (d) if plaintiff was the owner of any vehicle involved in the collision; and (e) the expenses and losses claimed as a result of the collision. The answers were "[a]ll information will be sent under a separate cover upon receipt from client," and "[i]nvestigation continues." The answers were condemned, the court saying that the rules required answers to be fully given in good faith.

*Singer* shows the spirit of the rules—full and meaningful discovery.

One of the practical purposes of an answer to a Rule 220 interrogatory is to provide a basis to determine the necessity of deposing an expert. If answers that in completeness conform to those contemplated by the rule, further discovery of that expert may not be neces-

sary, thereby saving time and expense. But, in addition, if further discovery is to be pursued, the responses allow preparation for the expert's deposition. Without knowledge of the general factual opinion held by the expert, opposing counsel is precluded from adequately preparing for his examination of the expert. With adequate preparation, the questions can be brief and to the point, again saving time and money. We note that in this case defendant's expert lived in the Virgin Islands, meaning plaintiff would have to spend a lot of money and time to "fly blind" to the Virgin Islands and take the expert's deposition without knowing the basis for the opinion.

In this case, although the answer disclosed the identity of the expert, it effectively excluded the expert's opinions and the basis for his opinion.

We believe that the answer was no more than a blanket statement that defendant's expert would testify favorably for the defendant. It is impossible to determine what opinions were to be expressed by the expert. This response does not disclose the factual basis of the expert's opinion. There is no substance to this purported "answer."

Was barring the expert an appropriate sanction?

We believe under these circumstances it was.

The rule says that failure to make disclosures will result in disqualification of the expert as a witness. 134 Ill. 2d R. 220(b)(1).

■ The decision to allow or exclude expert testimony is a matter committed to the sound discretion of the circuit court. The discretion given to the circuit court is broad and will not be interfered with unless it appears to have been abused. *Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 507 N.E.2d 1213.

In determining whether to allow or exclude the expert testimony, the circuit court may consider the following factors: surprise to the adverse party, the prejudicial effect of the testimony, the nature of the testimony, the diligence of the adverse party, the timely objection to the testimony, and the good faith of the party calling the witness. *Renfro*, 155 Ill. App. 3d at 162, 507 N.E.2d at 1231.

Rule 220 contemplates good faith on the part of all litigants. 134 Ill. 2d R. 220, Committee Comments, par. (b).

■ Here, the sanction was required because of defendant's own conduct.

Plaintiffs attempted but could not get defendant's compliance through supplemental interrogatories and motions to compel before trial. During trial, the circuit court itself inquired and found that defendant knew the basis of the expert's opinion 18 months before trial, but never revealed the basis to plaintiff, in fact, answered inter-

rogatories one year after they were propounded, and had told the expert that he preferred to correspond by telephone, not in writing.

This reflects negatively on the question of good faith.

There was no error, under these circumstances, in barring the testimony of defendant's expert.

## II. VOIR DIRE

Defendant claims that he was denied a fair trial because of comments made by two veniremen, and because the circuit court failed to discharge the entire venire present when the comments were made.

There were two episodes of comments, and both criticized the caliber of medical care defendant had provided on other occasions.

### Episode No. 1

"THE COURT: You know him as a patient of his?

JUROR: I was a patient of his.

THE COURT: You are or were?

JUROR: Sir?

THE COURT: You were?

JUROR: I was years ago.

THE COURT: What did he do for you?

JUROR: I had hemorrhaging of the nose, and I had changed doctors and had the problem corrected.

THE COURT: You say you changed doctors. You were not satisfied with his treatment?

JUROR: Right.

THE COURT: Okay. What did you feel the problem was, sir?

JUROR: I had—for no reason at all I'd start hemorrhaging and I had to go to the emergency room and they couldn't stop it, I finally had to have surgery.

THE COURT: All right. Well, let me ask you this, are you going to have a problem in this case?

JUROR: Well, I didn't have a happy experience on the first occasion, I finally had to have it taken care of with another doctor.

THE COURT: Well, the question is from personal experience with this doctor is it going to be so overwhelming that you just say 'Doc, I just don't think you did good?'

JUROR: I'd probably have trouble with that.

THE COURT: Okay. We'll excuse you. You can go back to the jury room, sir.''

## Episode No. 2

The second episode stands as proof that every now and again something can happen in trial that can make anyone bolt upright.

After the first episode everyone went back to their own business, the excused juror to the jury room, the court and counsel to the business of asking *voir dire* questions.

A panel member was being questioned. Down the box sat the others.

Suddenly, from down the box, a panel member who was not being questioned and never had been questioned, who simply had been sitting silently, announced:

"JUROR: I've been thinking, Dr. Berkowitz killed my brother."

The next words were spoken by the court:

"THE COURT: What is your name, sir?

JUROR: He was talking about Dr. Berkowitz, he let my brother die. I didn't know who it was—

THE COURT: You're Mr. who?

JUROR: Mr. (name deleted.)

THE COURT: We'll excuse you sir. You're juror number what?

JUROR: 22

THE COURT: We'll excuse you sir.

JUROR: Sorry.

THE COURT: That's fine. Thank you."

Defendant concedes that the first episode alone would be insufficient to deprive him of a fair trial, but claims that the two incidents operating together were so prejudicial that they deprived him of a fair trial. He argues it was not enough to excuse these veniremen, and that no cautionary instruction ever could overcome the prejudice of these incidents to him, and therefore, the only remedy was to recuse the entire venire.

■ The circuit court has the discretion to determine whether jurors can weigh the evidence impartially, and that determination will not be set aside unless it is against the manifest weight of the evidence. *Parson v. City of Chicago* (1983), 117 Ill. App. 3d 383, 453 N.E.2d 770.

In *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 429, 475 N.E.2d 840, 847, veniremen heard another's personal opinion of the accused. *Del Vecchio* held that the jury had not been tainted. Taint would have

resulted only if she who had expressed her preconceived opinion was allowed to remain on the jury.

█ The record does not establish that the panel members were prejudiced against the defendant, much less that prejudice was pandemic.

In this case, both the juror in episode number one and the juror in episode number two were discharged. The remaining veniremen each said they could be fair.

Trial judges, no less than trial lawyers, rely on instinct in assessing veniremen, their answers and whether they should serve as jurors. In this case, the trial judge had the opportunity to see and hear the veniremen. He concluded that the statements had not prejudiced them and was convinced that they could be fair and impartial. There is nothing in the record from which we can draw any inference that he was wrong. There is nothing in the record to show that he abused his discretion.

### III. PUNITIVE DAMAGES

In the alternative, defendant argues that the evidence did not support the submission of the issue of punitive damages to the jury. We agree.

█ Whether punitive damages may be awarded is a question of law for the court. (*J.I. Case Co. v. McMartin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 516 N.E.2d 260.) A circuit court's determination will not be disturbed absent an abuse of discretion. *Obermaier v. Obermaier* (1984), 128 Ill. App. 3d 602, 470 N.E.2d 1047.

█ However, punitive damages may only be recovered when the wrongful act complained of is characterized by fraud, malice, oppression, willfulness, or wantonness. A conscious disregard for the safety of others constitutes willful and wanton conduct and gives rise to the imposition of punitive damages. A court may not allow the jury to award punitive damages unless it finds defendant acted with fraud, actual malice, deliberate violence or oppression, or acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. *Kenner v. Northern Illinois Medical Center* (1987), 164 Ill. App. 3d 366, 517 N.E.2d 1137; *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.

█ The evidence in this case does not demonstrate a conscious disregard for plaintiff's safety or knowledge that defendant's medi-

cal treatment imposed an increased risk of serious harm. A defendant is guilty of willful and wanton conduct when he demonstrates knowledge that his conduct poses an increased risk of serious physical harm to another. *Albers v. Community Consolidated No. 204 School* (1987), 155 Ill. App. 3d 1083, 508 N.E.2d 1252.

The evidence, therefore, did not support the submission of the issue of punitive damages to the jury. The punitive damages awarded, therefore, are reversed.

Defendant lastly claims that all these errors cumulatively denied him a fair trial and relies on *Bargman v. Economics Laboratory, Inc.* (1989), 181 Ill. App. 3d 1023, 537 N.E.2d 938. We reject this claim.

The judgment on the verdict for the plaintiff and against defendant, Wallace Berkowitz, M.D., assessing plaintiff's damages as being $79,975.80 is affirmed.

The judgment and verdict for punitive damages is reversed.

Affirmed in part; reversed in part and vacated in part.

HARRISON, J., concurs.

JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I respectfully dissent in part. While concurring in the court's treatment of the compensatory damage award and the discretionary exclusion of defendant's expert under Rule 220, I disagree with the majority on the question of punitive damages. As noted by the majority, whether punitive damages should be submitted to the trier of fact is a question of law to be considered by the court, and the circuit court's determination on that involves an exercise of its discretion that will not be overturned absent abuse. (*J.I. Case Co. v. Mc-Martin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 516 N.E.2d 260; *Obermaier v. Obermaier* (1984), 128 Ill. App. 3d 602, 470 N.E.2d 1047.) On the basis of the evidence presented and the applicable standards, as set forth in the majority's opinion, the trial court apparently decided that a trier of fact could reasonably find that defendant's acts could be construed as involving fraud, actual malice, deliberate violence or oppression, wilfulness or such gross negligence as to indicate a wanton disregard of the rights of others. The decision whether to award punitive damages is then a question left to the trier of fact and that decision should not be disturbed absent an abuse of discretion. (See *Beaton & Associates,*

*Ltd. v. Joslyn Manufacturing & Supply Co.* (1987), 159 Ill. App. 3d 834, 512 N.E.2d 1286.) In the instant case, the trier of fact had adequate evidence before it to award punitive damages, just as the trial court had an adequate basis to allow the question of punitive damages to be submitted to the trier of fact.

There was in the record sufficient evidence for a determination that punitive damages were appropriately submitted to the jury and adequate evidence for that jury to award punitive damages. Plaintiffs' evidence indicated that Mr. Huelsmann phoned the defendant at his home, told defendant that his wife was throwing up large amounts of blood clots, and was bleeding, and although defendant requested to speak to Mrs. Huelsmann, she was unable to talk. Defendant's advice was to gargle with hydrogen peroxide. Defendant Berkowitz indicates that this was part of the discussion, but that he also suggested going to the emergency room of St. Elizabeth's Hospital. Defendant Dr. Berkowitz testified that he waited for two hours for a return call as to Mrs. Huelsmann's condition and never received one, but did not check either at the hospital or at the Huelsmann home to determine his patient's condition. Defendant then left town on a previously scheduled trip; there is evidence in the record that Dr. Berkowitz's absence was not communicated to plaintiff, nor that plaintiff was given the name and phone number of a physician covering Dr. Berkowitz's calls.

Expert testimony was presented concerning the standard of care that should have been provided to Mrs. Huelsmann. Dr. Dobbs indicated that bleeding to the extent of death can result from a tonsillectomy and, specifically in this case, indicated that when a patient is spitting up blood and choking, she should be directed to a doctor immediately for care. He also testified that Dr. Berkowitz should have told this patient to go to the nearest emergency room immediately. As to Dr. Berkowitz's trip, there was evidence that the proper standard would have been to inform his patient that he would be out of town and indicate the doctor who would be on call to service that patient as well as indicating how to reach that doctor.

Evidence submitted to the jury on activities after the contact with Dr. Berkowitz gave a further basis for a submission of a punitive case to the jury. The evening after contacting Dr. Berkowitz, Mrs. Huelsmann again suffered coughing up blood and choking. At this time, they were unable to reach the doctor, as he had left town. They discovered this fact the next morning when phoning Dr. Berkowitz's office. Mr. Huelsmann took her to the emergency room

at St. Joseph's Hospital in Breese on Tuesday night, where treatment included removing a blood clot from her throat, treatment to prevent further bleeding, a shot to prevent her from going into shock, and transfusion with two units of blood. She was then admitted to the hospital for an overnight stay and released the next afternoon. A subsequent bleeding episode a few days later resulted in a return visit to St. Joseph's Hospital, from which she was sent to St. Elizabeth's Hospital and further treated to stop the bleeding. The hospital stay ran from Saturday until Wednesday, during which time she was treated with pain medication and mild tranquilizers for her nerves.

Plaintiff was unable to return to her employment for approximately a week, and upon her return performed only half-day service for the first couple of weeks. She testified of inability to sleep due to nightmares about bleeding and fear of death and received medication for nerves and sleep inducement. She was subsequently treated for anxiety and depression by Dr. Fazle Yasin, to whom she complained of hyperactivity, irritability, panic feeling, inability to cope with stress, excess crying, insomnia, weight loss, inability to work, a feeling of a loss of trust, and a decreased energy level. The diagnosis was depression. Plaintiffs' evidence further indicated improvement of plaintiff's condition but an extended prognosis of another year to reach her presurgical condition.

Given the standards cited above for submission of a punitive damage question to the trier of fact and the evidence submitted to the jury, the trial court's determination that the punitive damage question should be submitted was appropriate. The trial court's determination had a factual basis, and the trier of fact's decision to award punitive damages did not constitute an abuse of discretion.

For the above-stated reasons, I dissent from the reversal of the judgment for punitive damages.