NAPOLEON TARUC, Indiv. and as Special Adm'r of the Estate of Ceferina Taruc, Deceased, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)   No. 1—89—3518

Opinion filed July 25, 1991.

Schwartzberg, Barnett & Cohen and Heller & Richmond, Ltd., both of Chicago, for appellant.

Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago (Roger LeRoy, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Napoleon Taruc, brought this declaratory judgment action seeking a determination that State Farm is responsible for providing more than the face amount of uninsured motorist coverage on Taruc's insurance policies. The basis for this contention is State Farm's alleged failure to offer increased coverage options as required by section 143a—2 of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2). The trial court granted summary judgment in favor of State Farm. Taruc appeals, contending that State Farm failed to make a meaningful offer of uninsured motorist coverage pursuant to statute; summary judgment was improper where evidence involving the insurance agent's oral offer was contradicted; and the insurance agent's testimony regarding his routine office practices was inadmissible to establish what actually transpired during a meeting between Taruc and the agent.

We affirm.

BACKGROUND

Taruc is special administrator of the estate of his wife, Ceferina Taruc, who was killed in an automobile accident. Neither the owner nor the driver of the other vehicle involved in the collision had insurance. Taruc had three automobile insurance policies (for three different vehicles) issued by State Farm. Each policy provided the minimum, statutory amount of uninsured motorist coverage, $15,000 per person, $30,000 per accident. Under section 7—203 of the Illinois Vehicle Code, minimum amounts of personal injury and property damage liability insurance must be included in every policy of automobile insurance. (Ill. Rev. Stat. 1987, ch. 95½, par. 7—203.) Every policy of automobile insurance also must contain uninsured motor vehicle coverage in at least the amount given in section 7—203 of the Vehicle Code. (Ill. Rev. Stat. 1987, ch. 73, par. 755a.) Under section 143a—2 of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 755a—

2), purchasers of auto insurance must be given the opportunity to elect or reject *additional* uninsured and underinsured coverage, up to the limits of the insured's bodily injury liability limits (in this case, $100,000 per person, $300,000 per accident).

In the pending case, the premium notices sent to Taruc upon renewal of two of the policies contained a "stuffer" that described uninsured and underinsured motor vehicle coverage. The premium notices stated in part: "We are offering you uninsured and underinsured motor vehicle coverage with limits equal to the bodily injury limits of $100,000/$300,000. If you want these increased limits, pay *** an increase of $13.20. If no change in limits is desired, pay amount due."

According to Taruc, when his wife was alive she generally paid the insurance bills, so he did not discuss the increased uninsured coverage option with her. He did, however, meet with an agent of State Farm in May 1986 to obtain the third policy. What did or did not transpire at that meeting is the basis for Taruc's position that he did not receive a meaningful offer of increased uninsured motorist coverage and that this court should reverse the summary judgment entered in favor of State Farm.

The deposition of the insurance agent, Ellis Flaws, contained a number of statements regarding the meeting he had with Taruc. To the extent Flaws lacked actual recollection of a specific conversation, he testified regarding his standard office procedure or routine business practices with respect to informing clients of their statutory right to increase their uninsured motorist coverage.

Taruc, in his deposition, testified that he did not actually recall the discussion he had with Flaws regarding the coverage options. He admitted that he signed an acknowledgment of coverage acceptance or rejection form, however.

The trial court held that State Farm was entitled to judgment as a matter of law, thereby rejecting Taruc's position that there were genuine issues of material fact to be decided in a trial.

OPINION

The primary issue Taruc raises in his appeal centers on the adequacy of the offer that State Farm made to him with respect to the uninsured motor vehicle coverage. Although his brief lists eight subissues related to this dispositive question, we focus on the legal requirements of the statutory offer; the admissibility of routine business practice evidence; and whether there are issues of material fact in dispute.

## I

■ In relevant part, section 143a—2(1) of the Illinois Insurance Code states:

"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State *** unless uninsured motorist coverage as required in Section 143a of this Code is offered in an amount up to the insured's bodily injury liability limits." Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(1).

If the named insured rejects the offer, the minimum coverage limits remain in effect. The insurer need not thereafter renew the offer in renewal or supplemental policies. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(2).) The insurer must make the same offer with respect to underinsured motorist coverage. Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(3).

■ In *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548, the Illinois Supreme Court held that to effectuate the insured's right to elect or reject underinsured motorist coverage, the insurer must give enough information regarding the coverage to enable an intelligent election to be made. The court cited a Minnesota case, *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849, which set out a four-part test:

"(1) [N]otification must be commercially reasonable if the offer is made in other than face-to-face negotiations; (2) the limits of the optional coverage must be specified and not set forth in general terms; (3) the insured must be intelligibly advised by the insurer of the nature of the option; and (4) the insurer must advise the insured that the optional coverage is available for relatively modest premium increases." *Cloninger*, 109 Ill. 2d at 425-26, 488 N.E.2d at 550.

In the pending case, Taruc argues that the written notices that State Farm sent upon renewal of the first and second insurance policies were inadequate. He further contends that the information Flaws gave Taruc during the meeting they had to discuss the third insurance policy did not intelligibly advise Taruc of the uninsured motor vehicle coverage options.

## A

■ We may summarily dispose of the challenge directed to the

written notices because it is undisputed that State Farm sent the Tarucs a written insert or "stuffer" which described the uninsured and underinsured coverages, along with a premium notice that set out the specific amount of increase in the premium that would be required to pay for the coverage option ($13.20). The notice provided for acceptance of the increase coverage limits through payment of the higher amount or rejection of the increased limits by payment of the "amount due." In *Houser v. State Farm Mutual Automobile Insurance Co.* (1989), 193 Ill. App. 3d 125, 549 N.E.2d 17, the court approved the same premium renewal notice and coverage information that is in issue in this case, affirming summary judgment for State Farm on the adequacy of the written offer of optional limits.

Taruc cites no authority to support his assertion that the written offers were defective. Instead, he contends that he could not make an intelligent decision on whether to purchase additional uninsured motorist coverage because the printed forms he received "do not explain that uninsured motor vehicle coverage applies to the named insureds even when they are not occupying the automobile covered by the policy and does not explain that purchasing additional uninsured motor vehicle coverage for one of two owned vehicles will provide additional coverage for insured family members even when they are occupying the other vehicle."

■ We reject this contention. The law that requires insurers to offer the increased coverage option does not require that every contingency be explained in detail to the prospective insured. Taruc's printed forms invited him to telephone his agent for answers to questions. It does not appear unreasonable to expect an insured to ask questions and otherwise obtain specific information as to the exact scope of coverage, particularly when that insured already has policies of insurance containing the uninsured motorist coverage and is merely being offered the opportunity to increase coverage limits to the extent of his general liability coverages. See *Orr v. Illinois Farmers Insurance Co.* (1991), 210 Ill. App. 3d 1015, 1028, 569 N.E.2d 619 (If insured has sufficient sources of information, including having owned policies containing uninsured motorist coverage from the outset, insured's rejection of offered coverage may be deemed an intelligent election in spite of argument that offer did not exactly duplicate model offer set out in *Cloninger*) (reversing summary judgment for insured and entering summary judgment for insurer).

## B

The remaining question is whether Taruc was given a meaningful

offer of uninsured motorist coverage when he obtained the third policy of insurance during his meeting with a State Farm agent. On May 6, 1983, he and agent Flaws met at State Farm offices. Neither party recalls exactly what was said by whom with respect to what. Apparently, Taruc would have this court reverse the summary judgment order and allow him to proceed to trial because of this uncertainty in the evidence. While it is true that State Farm has the burden of establishing that no genuine issue of material fact exists on summary judgment, plaintiff is the one who must ultimately establish that State Farm failed to give adequate information in the meeting.

The record contains a printed selection form that Taruc signed during the meeting with Flaws. It recites:

> "I have been provided the opportunity to purchase Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage up to an amount equal to my automobile Bodily Injury Liability limits, and instead I select lower limits of $____15____/____30____."

Taruc argues that this form is not dispositive because there "is nothing in the Selection Form to indicate what Taruc was told by Agent Flaws on May 6, 1983." He then focuses on the perceived deficiencies in Flaws' deposition testimony, pointing out that Flaws did not specifically remember the meeting and instead relied on his normal office procedures. Taruc contends that Flaws' evidence of normal office procedure should be deemed inadmissible, citing *Goetz v. Country Mutual Insurance Co.* (1975), 28 Ill. App. 3d 154, 328 N.E.2d 109, and *State Farm Mutual Automobile Insurance Co. v. Oss* (1984), 127 Ill. App. 3d 119, 468 N.E.2d 439. Those cases state that proof of a regularly followed business routine is admissible if there is some evidence that it was followed in the particular case.

More recent cases, however, have recognized that Federal Rule 406 states the proper formulation of the relevance (and thus admissibility) of habit evidence. (See, *e.g., Wasleff v. Dever* (1990), 194 Ill. App. 3d 147, 155, 550 N.E.2d 1132, 1137, *appeal denied* (1990), 132 Ill. 2d 555, 555 N.E.2d 386 (Rule 406 "establishes that habit testimony is always admissible for the purpose of proving the conduct of a person or business organization"); *Webb v. Angell* (1987), 155 Ill. App. 3d 848, 508 N.E.2d 508, citing *Bradfield v. Illinois Central Gulf R.R. Co.* (1985), 137 Ill. App. 3d 19, *aff'd on other grounds* (1987), 115 Ill. 2d 471.) Federal Rule 406 states:

> "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the

conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Fed. R. Evid. 406.

■ Flaws' routine practice testimony is clearly relevant. Accordingly, Taruc's challenge apparently is directed to a perceived lack of foundation for the admission of the evidence. Under Taruc's formulation, the evidence would be inadmissible at trial without some evidence showing that Flaws actually followed his normal office procedures on the day he met with Taruc.

■ We believe that in the pending case, State Farm established a relevant and admissible routine business practice under both the *Goetz* formulation and Federal Rule 406. Excerpts from Flaws' deposition show that he did remember the actual meeting with Taruc, albeit in general terms. Flaws explained why he remembered this particular meeting more than other office meetings in which subsequent claims were not filed. Nevertheless, Flaws did not pretend to specifically recall details of the conversation he had with Taruc regarding the uninsured motorist coverage option. Instead, he testified at length to the routine standards or office policies he follows when meeting with customers, including the specific guidelines he uses in offering them the increased coverage options for uninsured motorist insurance.

We conclude that Flaws' testimony of record is both competent and relevant, and therefore admissible to establish the inference that on this particular occasion he did in fact follow the routine and inform Taruc of the coverage options in conformance with the law. Taruc's signature on the written selection form further confirms that the coverage options were discussed in the meeting. Therefore, if Taruc is to defeat the inference that the increased coverage option was explained, he must provide some competent evidence that it was not. The factual sufficiency of Taruc's opposition to the motion for summary judgment is discussed in issue II, below. On the narrower issue of whether an offer was made, however, Taruc argues only that he did not get enough information or the right kind of information, under the *Cloninger* rationale. In other words, he does not deny that an offer was made or that he rejected the offer when he elected to maintain the minimum uninsured motorist coverage limits. Rather, he asserts that, for purposes of summary judgment, State Farm has not proved that it gave him an *adequate* explanation of the option.

In that regard, Taruc challenges Flaws' statement that he tells clients that the cost of the optional coverage is "reasonable" or "nominal." According to Taruc, telling a client that the cost is "reasonable" does not convey the *Cloninger* court's directive that the insurer must

advise the insured that the cost of the optional coverage is "relatively modest." He reasons that since the cost of a coat or car may be "reasonable" but not modest, cheap, or nominal, the usage of "reasonable" is misleading and vague.

■■ ■ Semantic quibbling aside, we do not read *Cloninger* as requiring the use of any particular words to convey the necessary information that the insured may purchase the increased coverage for a small additional amount. (*Cf. Rutter v. Horace Mann Insurance Co.* (1989), 190 Ill. App. 3d 467, 476, 545 N.E.2d 1381, 1386 (cost information "is obviously intended to reassure an insured that the coverage is not very expensive"); *Watson v. Hartford Casualty Insurance Co.* (1990), 205 Ill. App. 3d 88, 93, 562 N.E.2d 1261, 1264, *appeal denied* (1991), 136 Ill. 2d 556, 567 N.E.2d 344 ("[O]ffer need not list the exact premiums so long as it states the additional cost is modest").) In this case, the record reflects that the two written notices that Taruc received on his other two policies contained the actual amount of the increased premium, $13.20, which represents less than 10% of the regular premium. Arguably, one person could find it reasonable but not nominal and another could find it relatively modest and reasonable but not necessarily cheap. When the exact amount of premium increase is given, however, the insured can make his own evaluation of cost. Accordingly, we decline to reverse the summary judgment simply because Flaws testified he usually uses "reasonable" or "nominal" to characterize the premium increase, instead of some other terminology.

■■ We conclude that State Farm established that its offers, both written and the oral, complied with the law.

## II

■■ In defending against State Farm's motion for summary judgment, Taruc was required to present evidence sufficient to raise a *genuine* issue of material fact. He cannot rely on his own failure to understand the implications of maintaining lower coverage limits. His inconsistent deposition testimony contains an admission that he *did not remember* if he and Flaws discussed the cost of uninsured motorist coverage. He said if he "were not mistaken," Flaws just showed him "some of the application forms, some of the figures." He repeated that it was "not that much" that he remembered. At other points in the deposition Taruc simply answered "no" to the question whether he and Flaws discussed the coverage option. Since he is the plaintiff with the burden of proving he was not given a proper offer, at trial he would not prevail if he did not remember the discussion.

Moreover, his admission that Flaws showed him some forms and "figures" supports State Farm's position that its agent gave him the necessary information. Finally, Taruc signed the printed selection form, which reveals on its face that he elected to maintain the lower limits of coverage. The coverage amounts were written in and not preprinted. Above Taruc's signature, moreover, is an attestation that he read the application for insurance and selected the limits and coverage.

We caution that we are not evaluating the quantity of evidence or witness credibility on review of summary judgment. We believe, however, that State Farm's right to summary judgment based on the record before us is not undercut by Taruc's inconsistent testimony in his deposition that he did or did not receive certain information, or that he does not remember. While the factual showing necessary to defeat summary judgment may be small, it must be more than exists in this case. See *Carter v. Dunlop* (1985), 138 Ill. App. 3d 58, 69, 484 N.E.2d 1273, 1281 (Plaintiffs opposing summary judgment need not prove their case at that stage but "must provide the factual basis which would arguably entitle them to judgment"; moreover, they have an "affirmative duty to bring forth all facts and evidence of a cognizable cause of action").

In light of our disposition of the case, we need not address Taruc's contention that Flaws should have told him that Taruc could raise the uninsured motorist coverage on any one of his three policies and thereby receive full protection to all family members who were insureds.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.