RICHARD G. RUTTER, Plaintiff-Appellant, v. THE HORACE MANN IN-
SURANCE COMPANY, Defendant-Appellee.

Second District   No. 2—89—0043

Opinion filed October 27, 1989.

Joseph D. Olsen, of DeBruyne, Yalden & Olsen, of Rockford (Raphael E. Yalden II, of counsel), for appellant.

David H. Levitt and D. Kendall Griffith, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Bruce L. Carmen, of counsel), for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Richard G. Rutter, appeals from orders of the circuit court of Winnebago County (1) denying plaintiff's and granting defendant the Horace Mann Insurance Company's motions for summary judgment and (2) denying plaintiff's amended motion to reconsider the granting of defendant's motion for summary judgment on

plaintiff's complaint seeking a declaratory judgment reforming his automobile insurance policy with defendant by implying underinsured-motorist coverage. We affirm in part, reverse in part, and remand.

On April 15, 1983, defendant reissued a policy of automobile liability insurance providing plaintiff with, *inter alia*, bodily-injury liability coverage of $100,000 per person and $300,000 per occurrence and uninsured-motor-vehicle-bodily-injury coverage of $15,000 per person and $30,000 per occurrence. It appears that on September 16, 1983, plaintiff was involved in an automobile accident in which another driver, Carlyle L. Gemmer (Gemmer), was at fault. Plaintiff contends that Gemmer was underinsured, that defendant did not make a proper offer to him of underinsured-motorist coverage (see Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3); *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 516 N.E.2d 268; *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956), and that he is therefore entitled to implied underinsured-motorist coverage "in the amount of his bodily-injury liability portion of his policy ($100,000 per person/$300,000 per occurrence)" under his policy with defendant.

The basis of the trial court's order granting defendant's and denying plaintiff's motions for summary judgment was its conclusion that Gemmer was not an underinsured motorist. Section 143a—2 of the Illinois Insurance Code (the Code) provides, *inter alia*:

> "For the purpose of this Act the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident." (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3).)

Gemmer's policy provided single limit liability coverage. It also contained the following provision, as an amendment, designed to satisfy the requirements of Illinois law (see Ill. Rev. Stat. 1981, ch. 95½, par. 7—203):

> "The limit of Bodily Injury and Property Damage Liability Coverage shall first be
>
> 1. $15,000 for all damages arising out of bodily injury sustained by one person as the result of any one occurrence,

2. $30,000 for all damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence, and

3. $10,000 for all damages arising out of injury to or destruction of all property of one or more persons or organizations as the result of any one occurrence. [*sic*]

and such limits shall then be supplemented by any amount remaining within the limit for Bodily Injury and Property Damage Liability Coverage stated in the Declarations, which limit is the total amount of the Company's liability for all damages as the result of any one occurrence."

Plaintiff, asserting as he has throughout this litigation that Gemmer's policy had a single limit for liability of $100,000, argues:

"At the time of the accident, therefore, the Gemmer policy only afforded $90,000.00 as the limit of bodily injury liability coverage available to Gemmer. If plaintiff's policy is reformed to equal his own $100,000/$300,000 limit, Gemmer is an underinsured motorist under any interpretation of Sec. 143a—2."

From the arguments in the trial court and the trial court's statement of the reasons for its ruling, it is apparent that both parties and the court believed that, if plaintiff's insurance policy with defendant was reformed to include underinsured-motorist coverage, that coverage's limits would be equal to the $100,000-per-person/$300,000-per-occurrence limits of the policy's bodily-injury liability coverage. It is also apparent that all concerned recognized that it was the $100,000-per-person limit that would apply to the September 16, 1983, accident. Moreover, plaintiff claims that after Gemmer's policy paid for $16,757.97 in property-damage claims as a result of the September 16, 1983, accident, there remained only $83,242.03 in coverage for bodily injury.

Thus, plaintiff's contentions that Gemmer was underinsured are premised on the assumption that Gemmer's policy provided $100,000-single-limit liability coverage which, after setting aside the required $10,000 pursuant to the policy amendment or paying the actual $16,757.97 for property damage, provided less than the $100,000 per person bodily-injury limit in plaintiff's insurance policy with defendant. (See Ill. Rev. Stat. 1981, ch. 73, par. 755a—2.) Defendant and the trial court also assumed, apparently based on plaintiff's amended complaint, that Gemmer's insurance policy had a single limit for liability of $100,000.

During oral argument of this case, this court brought to the attention of counsel for both parties an exhibit indicating Gemmer's policy

had a single limit of $300,000 which was attached to plaintiff's counsel's affidavit in support of the amended motion to reconsider. In response to a suggestion from the bench as to how to present the matter to the court, counsel for plaintiff has filed a motion to amend the record on appeal supported by an affidavit of plaintiff's counsel and a stipulation by both parties "that the Record on Appeal herein may be amended in accordance with Plaintiff's Motion for Leave to Amend the Record on Appeal." In the motion, plaintiff seeks "leave to amend the record on appeal *** by deleting page 381 of the Record on Appeal, which purports to show the declaration page of the automobile liability policy of Carlyle L. Gemmer *** at the time of the September 16, 1983 automobile accident with [plaintiff] at issue herein, but which actually is a Gemmer declaration page dated 10/28/82 in the amount of $300,000.00, and substituting the correct declaration page dated 4/28/83 in the amount of $100,000.00." Plaintiff's counsel's affidavit in support of the motion to amend the record states, *inter alia*:

"8. At the time of the filing of Affiant's Affidavit at pages 366-395 of the Record on Appeal herein, the October 28, 1982/$300,000.00 declaration page was inadvertently attached to Gemmer's insurance policy rather that [*sic*] the April 28, 1983/$100,000.00 declaration page.

9. The April 28, 1983/$100,000.00 declaration page attached to Appellant's Motion to Amend the Record on Appeal is a true and correct copy of the declaration page of Gemmer, which was in effect at the time of the September 13, 1983 automobile accident as produced in Appellant's civil suit against Gemmer."

From the foregoing it is apparent that the record on appeal is completely accurate with respect to what occurred in the trial court. The case was tried on the assumption that Gemmer's policy had a $100,000 single limit; plaintiff's counsel's affidavit in support of the motion to reconsider stated that Gemmer's policy had a $100,000 single limit; and the exhibit attached to plaintiff's counsel's affidavit in support of the motion to reconsider included a declaration page indicating Gemmer had a policy with a single limit of $300,000. All of this occurred in the trial court and is accurately reflected in the record. Plaintiff's motion to amend the record seeks to substitute for the exhibit actually filed in the trial court an exhibit not only never filed in, but apparently also never presented to, the trial court on the ground that the substituted exhibit would more accurately indicate Gemmer's policy limits than the exhibit actually filed.

■■ Supreme Court Rule 321 provides:

"The record on appeal shall consist of the judgment appealed

from, the notice of appeal, and the entire original common law trial court record, unless the parties stipulate for, or the trial court, after notice and hearing, or the reviewing court, orders less. The trial court record includes any report of proceedings prepared in accordance with Rule 323 and every other document filed and judgment and order entered in the cause. There is no distinction between the common law record and the report of proceedings for the purpose of determining what is properly before the reviewing court. No assignment of errors or cross-errors is necessary." (107 Ill. 2d R. 321.)

From this it is apparent that the documents to be included in the record on appeal are only those which were filed in the case.

Supreme Court Rule 329 provides:

"The record on appeal shall be taken as true and correct unless shown to be otherwise and corrected in a manner permitted by this rule. Material omissions or inaccuracies or improper authentication may be corrected by stipulation of the parties or by the trial court, either before or after the record is transmitted to the reviewing court, or by the reviewing court or a judge thereof. Any controversy as to whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by that court and the record made to conform to the truth. If the record is insufficient to present fully and fairly the questions involved, the requisite portions may be supplied at the cost of the appellant. If necessary, a supplemental record may be certified and transmitted." (107 Ill. 2d R. 329.)

In view of the opening sentence stating that the record "shall be taken as true and correct unless shown to be otherwise and corrected" in accordance with the rule (107 Ill. 2d R. 329); the later statement that "[a]ny controversy as to whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by that court and the record made to conform to the truth" (107 Ill. 2d R. 329); the statement in the committee comments to the rule that "[t]his rule is a comprehensive provision covering amendment of the record on appeal, correction of improper authentication, and the settling of any questions concerning whether the record conforms to the truth" (Ill. Ann. Stat., ch. 110A, par. 329, Committee Comments, at 446 (Smith-Hurd 1985)); and the aforementioned provisions of Rule 321 concerning the contents of the record on appeal (107 Ill. 2d R. 321), it is apparent amendment of the record on appeal is permitted to make the record more accurately reflect what occurred in the trial court.

■ In the case at bar, the record accurately reflects what transpired in the trial court. The exhibit attached to the affidavit of plaintiff's counsel in support of the motion to reconsider apparently does not accurately reflect the state of Gemmer's coverage on the date of the accident. It is unquestioned, however, that it is the exhibit that was filed with the affidavit in the trial court. Accordingly, the motion to amend the record on appeal is denied.

■ We are thus faced with a record that is inconsistent with respect to whether Gemmer's policy provided $100,000 or $300,000 in coverage. Since not only plaintiff, but defendant and the court as well, assumed throughout the trial court proceedings that the policy had a $100,000 limit; since both parties assert in this court that the policy had a $100,000 limit; and since the only indication of a $300,000 limit is an affidavit of plaintiff's counsel, which is internally inconsistent in that it also asserts a $100,000 limit and which was filed only at the very end of the trial court proceedings in support of the motion to reconsider, we will consider the propriety of the judgment on the assumption that Gemmer's policy had a single limit of $100,000.

Plaintiff contends that the trial court erred in granting defendant's and denying plaintiff's motions for summary judgment. Several subsidiary issues arise in the course of considering this primary issue: (1) whether defendant made a proper offer of underinsured-motorist coverage to plaintiff; (2) whether any deficiencies in the offer were remedied by information available to plaintiff from other sources; (3) if the offer was deficient, what the remedy for that deficiency should be; (4) whether Gemmer was underinsured; and (5) if Gemmer was underinsured, the amount of underinsured-motorist benefits to which plaintiff would be entitled.

The trial court ruled in favor of defendant on the ground that Gemmer was not an underinsured motorist. The court stated:

"The statute in question defined underinsured motor vehicle as a vehicle for which the sum of the limits of liability under all bodily injury, liability insurance policy [sic] is less than the limits for underinsured coverage provides [sic] the insured as define [sic] in the policy at the time of the accident.

In this case, at the time of the accident, Gemmer had automobile insurance, combined policy in effect in the amount of a hundred thousand dollars. Therefore, there was available for Gemmer's bodily injury liability claim in that amount, a hundred thousand dollars. The entire limit of that amount might have been applied to Rutter's bodily injury claim. And there-

fore, I find that he was not an underinsured motorist."
The trial court ruled on "the other issues for appellate purposes," stating:

> "Well, I'm going to rule against the defendant on the other issues. Finding *** that the notice does lack one of the requisite elements, that being the statement that optional coverage is available for relatively modest premium increase or words that would convey that principle to the purchaser.
>
> And I find that that is an important element of the test for the reasons I stated, that a contrary understanding could prevail in the absence of that type of language to a person who is not familiar with the insurance pricing practices.
>
> And then as to the issue of whether the defendant may supplement the notice by information that was available through other sources to this particular insured, I would find that there is a factual issue. And that the plaintiff has raised a sufficient factual issue as to whether he, in fact, had actual knowledge of those matters."

We will discuss the issues in the order in which we have listed them.

■ The first issue to be discussed is whether defendant made a proper offer of underinsured-motorist coverage to plaintiff under section 143a—2 of the Code. (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2.) We have stated the law applicable to this issue as follows:

> "In *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548, our supreme court set forth a four-part test to determine the sufficiency of an offer for optional coverage as required by section 143a—2 of the Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2). To satisfy the requirements of section 143a—2, an offer must (1) notify the insured in a commercially reasonable manner if the offer is not made in face-to-face negotiations; (2) specify the limits of the optional coverage without using general terms; (3) intelligibly advise the insured of the nature of the offer; and (4) advise the insured that the optional coverage is available for a relatively modest premium increase. *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 425-26, 488 N.E.2d 548[, 550]." (*Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 553, 515 N.E.2d 1304, 1306-07.)

We believe that *Krska* correctly interpreted *Cloninger* and that the test as set forth in *Krska* applies to the issue at bar. We therefore decline defendant's invitation to overrule or distinguish *Krska*.

■ Plaintiff only challenges defendant's offer of underinsured-

motorist coverage on the ground that it did not advise him that the coverage was available for a relatively modest premium increase. The offer was made in a "stuffer" sent with the notice to renew plaintiff's policy on October 1, 1980. The stuffer did not note the specific amount of premium increase for each different amount of underinsured-motorist coverage or that the coverage was available for a relatively modest premium increase. All the stuffer said about this subject was, "Note that there is a separate premium charge for [underinsured motorist] Coverage." This statement, which was in the nature of a warning that the additional coverage would cost more money, was not the equivalent of the required element of an offer of underinsured-motorist coverage which is obviously intended to reassure an insured that the coverage is not very expensive. Defendant contends that documents it mailed to all its agents should be considered a part of its offer to plaintiff, who was a part-time agent of defendant. These documents were clearly no part of the offer of underinsured-motorist coverage but, rather, were intended to give all of defendant's agents information useful in selling its policies or serving its policyholders. We therefore conclude that the offer of underinsured-motorist coverage to plaintiff was insufficient.

■■ ■ However, if plaintiff received from another source the information missing from the offer itself, no legitimate purpose would be served by relieving plaintiff of the consequences of his decision not to purchase the additional coverage. (See *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 425, 488 N.E.2d 548, 550 ("[W]e believe that the legislature intended that the 'offer' mandated in section 143a—2(3) provide the insured with enough information regarding underinsured-motorist coverage to allow the insured to make an intelligent decision of whether such coverage should be elected or rejected").) Defendant filed affidavits and documents from which it can be concluded that defendant mailed to all of its agents a rate card specifying the additional premium charged for each amount of underinsured-motorist coverage available. Plaintiff filed an affidavit in which he denied receiving the information regarding premiums for underinsured-motorist coverage. Since the question at this point is whether an inadequate offer may be made adequate by information from a source other than the offer itself, we disagree with defendant's contention that it is only necessary that the information have been sent to plaintiff in a commercially reasonable manner. Rather, to supplement an otherwise inadequate offer, it is necessary that the additional information actually be received by the insured. There was, accordingly, a genuine issue of material fact with respect to whether

plaintiff received the premium information that would have supplied the information missing from the offer.

■ At this point, it is necessary to determine the appropriate remedy if the offer was deficient. The cases are agreed that the remedy is to imply underinsured-motorist coverage, but are not agreed as to the amount. Three approaches to determining the amount have been employed. It has been held that the proper remedy for an insurance provider's failure to properly offer underinsured-motorist coverage is to imply such coverage by the operation of law with limits equal to the insured's uninsured-motorist coverage (*Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 337, 465 N.E.2d 956, 962); equal to the limits the insured selected for bodily-injury coverage (*Fuoss v. Auto Owners (Mutual) Insurance Co.* (1986), 148 Ill. App. 3d 526, 535, 499 N.E.2d 539, 545); or equal to the maximum amount of bodily-injury liability coverage being offered by the insurance provider for the last renewal period prior to the insured's injury (*Logsdon v. Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 963-64, 493 N.E.2d 748, 753). The third approach, which was argued by plaintiff in the trial court but not on appeal, is no longer viable in light of our supreme court's decision in *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 434-35, 516 N.E.2d 268, 270-71.

Contrary to the implication in plaintiff's brief, our supreme court in *Fuoss* did not decide whether the remedy for an inadequate offer of underinsured-motorist coverage should be implication of coverage in the amount of uninsured-motorist coverage or implication of coverage in the amount of the insured's bodily-injury liability limits. (See *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 434, 516 N.E.2d 268, 270 (the court did not decide between these two possible remedies because, even under the more favorable of the two, Fuoss would not be entitled to any relief).) Large amounts of underinsured-motorist coverage should not be implied on the basis of ambiguous or highly speculative claims by the insured. See *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 434-35, 516 N.E.2d 268, 270-71.

■ If a proper offer of uninsured-motorist coverage was made (see *Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 553, 515 N.E.2d 1304, 1306-07), we believe that any underinsured-motorist coverage implied should have limits equal to those of the uninsured-motorist coverage. This is because it is unlikely an insured would increase his uninsured-motorist coverage and pay for the higher level of underinsured-motorist coverage (see Ill. Rev. Stat. 1981, ch. 73, par.

755a—2(4) ("The named insured may elect to purchase limits of under-insured motorist coverage in an amount up to the uninsured motorist coverage")) so that he would have more coverage for accidents with motorists with some insurance than he was willing to purchase for accidents with wholly uninsured motorists. The offer of uninsured-motorist coverage at bar, however, suffers from the same defect as the offer of underinsured-motorist coverage, in that the stuffer did not provide adequate information with respect to the premiums charged for additional coverage. The offer of uninsured-motorist coverage might be supplemented in the same way the offer of underinsured-motorist coverage might be, so if the plaintiff received the documents defendant claims to have sent to him indicating the premiums charged for different amounts of uninsured-motorist coverage, then the most underinsured coverage that should be implied would have limits equal to plaintiff's uninsured-motorist coverage limits.

If, on the other hand, there was no proper offer of uninsured-motorist coverage and there was no supplementation to make any inadequate offer adequate, then we believe that the remedy for an insufficient offer of underinsured-motorist coverage should be the implication of such coverage with limits equal to the bodily-injury liability limits of the insured's policy. (See Ill. Rev. Stat. 1981, ch. 73, pars. 755a—2(2), (4) (insured may elect uninsured coverage up to his bodily-injury limits and underinsured coverage up to his uninsured coverage); *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 433-35, 516 N.E.2d 268, 270-71 (court would not imply underinsured coverage in an amount greater than the bodily-injury limits originally selected by the insured).) In such a case, it is not improbable that the insured would have selected limits providing the insured with protection equivalent to that he provides the public. While it is true that the insured might have selected lower underinsured-motorist-coverage limits, it is not unreasonable to require the insurance provider to bear the risk that this may be true when it was the insurance provider's failure to make a proper offer of either uninsured or underinsured-motorist coverage that has made it impossible to reasonably imply lower coverage limits.

Plaintiff's policy had uninsured-motorist coverage limits of $15,000 per person and $30,000 per occurrence. Since he has already received $83,242.03 from Gemmer's insurance provider for his injuries, it is obvious that plaintiff would be entitled to no recovery of underinsured-motorist benefits from defendant if the limits of that coverage were implied in amounts equal to plaintiff's uninsured-motorist coverage limits. See Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3).

■■■ Whether Gemmer would be underinsured if underinsured-motorist limits equal to plaintiff's bodily-injury liability limits were implied in the policy is the question the trial court found dispositive. The trial court stated:

"[A]t the time of the accident, Gemmer had automobile insurance, combined policy in effect in the amount of a hundred thousand dollars. Therefore, there was available for Gemmer's bodily injury liability claim in that amount, a hundred thousand dollars. The entire limit might have been applied to Rutter's bodily injury claim. And therefore, I find that he was not an underinsured motorist."

Defendant makes essentially the same argument:

"[A]t the time of the occurrence, which is the relevant time frame under the Insurance Code, Gemmer had available $100,000 in bodily injury liability limits. The fact that some or all of the these [sic] limits could be exhausted by property damage claims does not alter the fact that a person injured by Gemmer's negligence could theoretically receive $100,000 from his carrier for those injuries.

\*\*\* After all, plaintiff had the right to forego a property damage claim against Gemmer's insurer and claim $100,000 for bodily injury alone. Plaintiff might very well have done this, since his own policy contained collision coverage for the actual cash value of his vehicle \*\*\*. Plaintiff thus could have made a claim against his own policy for his property damage and sought $100,000 from Gemmer's insurer. Naturally, plaintiff did not do this because to do so would have defeated any claim that Gemmer was an underinsured motorist for bodily injury.

\* \* \*

Plaintiff's argument that Gemmer is an underinsured motorist is based solely on the fact that some of Gemmer's coverage had to be set aside for a property damage claim. However, this argument assumes that plaintiff was under some compulsion to file such a claim or that a property damage claim was otherwise inevitable. This is not the case. Plaintiff had every right to file a $100,000 [claim] for bodily injury against Gemmer's policy and forego any claim for property damage."

We disagree with both defendant and the trial court.

The Code provides:

"For the purpose of this Act the term '*underinsured motor vehicle*' *means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury* or death of the insured, as de-

fined in the policy, *and for which the sum of the limits of liability under all bodily injury liability insurance policies* or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, *is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3).)

Gemmer's policy was, in basic form, one with a single $100,000 limit. The basic form was amended to include the following:

"The limit of Bodily Injury and Property Damage Liability Coverage shall first be

1. $15,000 for all damages arising out of bodily injury sustained by one person as the result of any one occurrence,

2. $30,000 for all damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence, and

3. $10,000 for all damages arising out of injury to or destruction of all property of one or more persons or organizations as the result of any one occurrence. [*sic*]

and such limits shall then be supplemented by any amount remaining within the limit for Bodily Injury and Property Damage Liability Coverage stated in the Declarations, which limit is the total amount of the Company's liability for all damages as the result of any one occurrence."

Contrary to defendant's contention, these terms did not give plaintiff the option of receiving all $100,000 in benefits from Gemmer's policy for bodily injury. Rather, they provide that the $100,000 total shall first be applied to meet the specific limits set forth, including the $10,000 limit for property damage, "and such [specific] limits shall then be supplemented by any amount remaining within the [$100,000 overall] limit." Thus, in any claim where there is property damage, the bodily-injury limit of Gemmer's policy will necessarily be less than the $100,000 overall limit, since up to $10,000 must be paid for property damage before the bodily-injury limits of $15,000 per person and $30,000 per occurrence could be supplemented under the terms of the policy.

This interpretation of Gemmer's policy also avoids the creation of the Hobson's choice defendant's interpretation would create. Under defendant's interpretation, plaintiff would be required to decide whether he wanted $100,000 in bodily-injury benefits, in which case he would have to forego the $10,000 minimum in property protection

guaranteed by the Illinois safety responsibility law (Ill. Rev. Stat. 1981, ch. 95½, par. 7—203); or whether he wanted benefits for the damage to his property, in which case he would have to forego the guarantees of his insurance policy and section 143a—2 of the Code that he be covered for bodily injury to at least the underinsured-motorist limits of his policy (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3)). Such a choice should not be forced on persons in plaintiff's position.

Defendant's suggestion that it somehow makes a difference that plaintiff could have made a property-damage claim under his own insurance policy's collision coverage, and then taken the full $100,000 under Gemmer's policy for bodily injury, is incorrect. First, as was previously noted, Gemmer's policy did not give plaintiff the choice to eliminate property-damage benefits. Second, we see no good reason to force a choice of this sort on plaintiff, who may legitimately wish to avoid paying a deductible or having a property-damage claim in his claim history for an accident in which someone else with insurance was at fault. Third, the principle defendant urges, that an insured may be forced to take all of an at-fault driver's single limit policy's benefits for bodily injury so that the insured's own insurer may avoid the payment of underinsured-motorist benefits, would also apply to insureds having no collision coverage and so no source of compensation for their property-damage losses other than the at-fault driver's insurance. Fourth, in the case at bar, defendant is arguing that it should not be required to pay an amount in underinsured-motorist benefits equal to the amount of collision benefits (less a $250 deductible) it apparently concedes it would have owed had plaintiff made his claims in the manner defendant insists he should have. Defendant offers no reason it should receive such a windfall simply because plaintiff did not make his claims in a particular manner.

Finally, we turn to the limits of defendant's liability in the event underinsured-motorist coverage is implied in the amount of plaintiff's bodily-injury limits. While the Code defines "underinsured motor vehicle" by reference to a comparison of the total bodily-injury liability limits of the at-fault driver with the underinsured-motorist limits of the insured, it sets the limits of underinsured-motorist coverage in a somewhat different manner. In this regard the Code provides:

> "The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3).)

So, if $100,000 in underinsured-motorist coverage is implied, and Gemmer's insurer actually paid $83,243.03 in bodily-injury benefits to plaintiff, the limit of liability for underinsured-motorist coverage under plaintiff's policy with defendant would be $16,756.97.

■■ The trial court erred in granting summary judgment for defendant but did not err in denying summary judgment for plaintiff because there were genuine issues of material fact. This cause must therefore be remanded.

On remand, it should first be determined whether plaintiff actually received the information about specific premiums for different amounts of underinsured-motorist coverage that defendant claimed to have sent him as an agent. If plaintiff actually received this information, no underinsured-motorist coverage should be implied and so judgment should be entered for defendant.

If plaintiff did not actually receive the information about specific premiums for underinsured-motorist coverage, and if the first determination on remand has not already resolved the question, it should next be determined whether plaintiff actually received from defendant sufficient information about uninsured-motorist-coverage premiums to make adequate the otherwise inadequate offer of that coverage. If he did actually receive sufficient information about uninsured-motorist-coverage premiums, then underinsured-motorist coverage should be implied with limits equal to plaintiff's uninsured-motorist-coverage limits. Because the amount paid by Gemmer's insurance policy for bodily injury far exceeds the uninsured-motorist limits of plaintiff's policy, this would mean that judgment should be entered in favor of defendant.

If plaintiff also did not receive sufficient premium information about uninsured-motorist coverage, underinsured-motorist-coverage limits equal to plaintiff's bodily-injury liability limits should be implied. In that case the limit of defendant's liability would be $16,756.97, and, of course, judgment should be for plaintiff.

The judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

Affirmed in part; reversed in part; and remanded.

McLAREN and REINHARD, JJ., concur.