JAMES ORR *et al.*, Plaintiffs-Appellees, v. ILLINOIS FARMERS INSURANCE COMPANY, Defendant-Appellant.

Second District Nos. 2—90—0677, 2—90—1014 cons.

Opinion filed March 22, 1991.

James S. Jendryk, of Querrey & Harrow, Ltd., of Wheaton, and Michael Resis and Victor J. Piekarski, both of Querry & Harrow, Ltd., of Chicago, for appellant.

John W. Countryman, of Countryman, Rissman & Krasner, of De Kalb, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Illinois Farmers Insurance Company, appeals the order denying its motion for summary judgment and granting the motion for summary judgment of plaintiffs, James Orr and William Orr. Defendant contends that the trial court erred in ruling that defendant failed to make an adequate offer of increased coverage under its uninsured-motorist insurance pursuant to section 143a—2(2) of the Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(2)).

Defendant issued two policies of automobile insurance to plaintiff James Orr, No. 22—8801—26—36 issued August 2, 1983, and 22—8801—26—37 issued March 10, 1985. William Orr, his son, became an insured person under both policies. On August 3, 1986, William Orr was struck by an uninsured motorist and sustained serious injuries in excess of $15,000. At that time, the insurance policies provided coverage in the amount of $100,000 per person for bodily injury with a total of $300,000 per occurrence (the 100/300 coverage) but only $15,000 and $30,000 for injuries caused by uninsured motorists (the 15/30 coverage). The policies are identical except for the specified automobile.

Plaintiffs filed a complaint in which they alleged defendant failed its statutory duty to offer them uninsured-motorist coverage up to the limits of their bodily injury coverage. Plaintiffs sought to reform the policy to increase the limits of the uninsured-motorist coverage to that of the bodily injury coverage or $100,000. Count I involved the first policy, and count II, the second. In count III, plaintiffs alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*). Both parties moved for summary judgment for counts I and II. The trial court entered judgment in favor of plaintiffs, and defendant filed a notice of appeal. Subsequently, defendant moved the trial court to modify the judgment to add the language: "The findings of Count I of the Complaint for Declaratory Judgment are final and appealable and that no just reason exists to stay enforcement or delay appeal under Supreme Court Rule 304(a)." Defendant filed another notice of appeal, and we granted defendant's motion to consolidate the appeals. We therefore have jurisdiction to review the judgment granting summary judgment regarding count I pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). We cannot review the judgment regarding count II at this time.

Each policy contained the following provisions dealing with uninsured motorists and underinsured motorists:

"PART II—UNINSURED MOTORIST

Coverage C—Uninsured Motorist Coverage

(Including Underinsured Motorist Coverage)

We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle.

* * *

3. Uninsured motor vehicle means a motor vehicle which is:

a. Not insured by a bodily injury liability bond or policy at the time of the accident.

b. Insured by a bodily injury liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of Uninsured Motorist Coverage shown in the Declarations.

c. A hit-and-run vehicle whose operator or owner has not been identified and which strikes

(1) You or any family member.

(2) A vehicle which you or a family member are occupying.

(3) Your insured car.

d. Insured by a bodily injury liability bond or policy at the time of the accident but the Company denies coverage or is or becomes insolvent.

* * *

Other Insurance

1. We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

2. The amount of Uninsured Motorist Coverage we will pay under Additional Definitions 3b shall be reduced by the amount of any other bodily injury coverage available to any party held to be liable for the accident.

3. Except as provided in paragraph 2 above, if any other collectible insurance applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits.

***

5. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability."

During 1983 and 1985, defendant's agent, Denny Komes, mailed James Orr letters concerning his coverage. The first letter stated as follows:

"August 8, 1983

* * *

Dear Jim and Cathy:

I have reviewed your automobile insurance to be certain that your coverages are providing the best possible protection at the lowest possible cost.

I've attached a quote sheet showing each of the following recommended changes and the impact of these changes on your premium.

1. Increase Bodily Injury and Property Damage coverage
2. Increase Uninsured Motorist coverage
3. Increase Medical coverage.

If you would like to discuss these recommendations further, please give me a call. If you would like to make the changes as recommended or prefer that no changes be made, please let me know.

Sincerely,

Illinois Farmers
Insurance Co.

Denny Komes

---

Yes, please make the recommended change.

Signed:______________________________

No, do not make any changes in my coverage.

Signed:______________________________

[Page 2]

Orr — AUTO INSURANCE QUOTATION 08/02/83
RATES EFFECTIVE 11/20/82
ILLINOIS SEMI-ANNUAL RATES

| CAR No. 1 75 COURIERT | | CAR No. 2 75 COURIERT | |
|---|---|---|---|
| FAR ACC. FREE | | FAR ACC. FREE | |
| R/C 1A R TERR 17 J 3 | | R/C 1A R TERR 17 J 3 | |
| BI/PD 250/500/100 | : 79.60 | BI/PD 100/300/50 | : 74.40 |
| U/M 100/300 | : 11.70 | U/M 15/30 | : 5.00 |
| MED/PIP $100,000 | : 15.60 | MED/PIP $5,000 | : 6.30 |
| COMP ACV DED | : 12.90 | COMP ACV DED | : 12.90 |
| TOWING/ROAD SERV | : 2.50 | TOWING/ROAD SERV | : 2.50 |
| DTH/DISM $5,000 | : 1.90 | TOTAL COST | : $101.10 |
| TOTAL COST | : $124.20 | | |

FOR YOUR REVIEW! — PRESENT COVERAGES."

The second letter was similar and included the following information on page two:

"February 11, 1985

* * *

Your automobile insurance will be renewing shortly and I have reviewed your coverages so that your policy is providing the best possible protection at the lowest possible cost.

A quotation is attached showing each of the recommended changes that are listed below and the effect these changes will have on your premium.

1. INCREASE BODILY INJURY TO 250/500
2. INCREASE UNINSURED MOTORISTS TO 250/500
3. INCREASE PROPERTY DAMAGE TO $100,000
4. INCREASE MEDICAL TO $100,000
5. ADD ACCIDENTAL DEATH & DISMEMBERMENT

If you would like to discuss these recommendations further, please give me a call or stop by the office. If you would like to make some or all of the recommended changes or prefer that no changes be made, please indicate below.

* * *

[Page 2]

James Orr — AUTO INSURANCE QUOTATION 02/11/85
RATES EFFECTIVE 10/15/84
ILLINOIS SEMI-ANNUAL RATES

| CAR No. 1 74 DATSUN | | CAR No. 2 74 DATSUN | |
|---|---|---|---|
| *** | | *** | |
| BI/PD 250/500/100 | : 83.70 | BI/PD 100/300/500 | : 78.20 |
| U/M 250/500 | : 17.00 | U/M 15/30 | : 6.00 |
| *** | | *** | |
| Rates with suggested changes | | Total cost you are paying now" | |

The third letter, dated August 15, 1985, was similar and included the following information on page two regarding a 1978 pickup for a renewal on August 26, 1985.

"[Page 2]

James Orr — AUTO INSURANCE QUOTATION 08/08/85
RATES EFFECTIVE 04/15/85
ILLINOIS SEMI-ANNUAL RATES

| CAR No. 1 78 FORD 2WT | | CAR No. 2 78 FORD 2WT | |
|---|---|---|---|
| *** | | *** | |
| BI/PD 250/500/100 | : 78.70 | BI/PD 100/300/50 | : 73.50 |
| U/M 250/500 | : 18.40 | U/M 15/30 | : 6.50 |
| *** | | *** | |
| Recommended Changes! | | Present coverages." | |

The fourth letter, dated August 19, 1985, was similar and included the following information on page two concerning a 1979 Cutlass:

"[Page 2]

James Orr — AUTO INSURANCE QUOTATION 08/20/85
RATES EFFECTIVE 04/15/85
ILLINOIS SEMI-ANNUAL RATES

| CAR No. 1 CUTLASS | | CAR No. 2 79 CUTLASS | |
|---|---|---|---|
| *** | | *** | |
| BI/PD 250/500/100 | : 57.30 | BI/PD 100/300/50 | : 53.50 |
| U/M 250/500 | : 18.40 | U/M 15/30 | : 6.50 |

*** For your review! *** Present coverages."

The information relevant to the uninsured motorist coverage may be summarized as follows:

| Renewal Policy | Letter | PolicyNumber | New Offer | Old Policy |
|---|---|---|---|---|
| Aug. 2, '83 | Aug. 8, '83 | 8801—26—36 | U/M 100/300 | U/M 15/30 |
| | | | $11.70 | $5.00 |
| | Feb.11, '85 | 8801—26—36 | U/M 250/500 | U/M 15/30 |
| | | | $17.00 | $6.00 |
| Aug. 26, '85 | Aug. 15, '85 | 8801—26—36 | U/M 250/500 | U/M 15/30 |
| | | | $18.40 | $6.50 |
| Sept. 10, '85 | Aug. 29, '85 | 8801—26—37 | U/M 250/500 | U/M 15/30 |
| | | | $18.40 | $6.50: |

In the order granting plaintiff's motion for summary judgment, the trial court found that the letters did not suggest that the existing coverage was inadequate and that Komes gave no reason for his recommendation that the coverages be increased. The court found no imperative in the language of the letters. The court found that defendant did not give an intelligible description of the coverage but merely used the word with a price affixed. Based on the ruling of this court in *Overbey v. Illinois Farmers Insurance Co.* (1988), 170 Ill. App. 3d 594, the trial court found the purported offer to increase the policy limits to be overly generalized and therefore insufficient. The trial court granted plaintiff's motion and reformed the policy to provide additional coverage to $100,000. Defendant appeals.

■ To understand the cause of action in this cause, it is necessary to examine the statutory requirements, and their subsequent construction by the courts, involving both uninsured-motorist coverage and underinsured-motorist coverage. The legislature in recent years has mandated certain kinds of coverages to be included in automobile insurance policies. All motorists are required to obtain a policy of insurance to protect other parties. No policy may be renewed or issued unless coverage is provided for protection against uninsured motorists in the minimum limits set for bodily injury coverage specified in section 7—203 of the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1985 ch. 95½, par. 7—203). At the relevant time, the Vehicle Code required only that motorists carry bodily injury coverage in the amount of $15,000/30,000. Ill. Rev. Stat. 1985 ch. 95½, par. 7—203; see

*Eipert v. State Farm Mutual Automobile Insurance Co.* (1989), 189 Ill. App. 3d 630, 633.

Section 143a—2(1) of the Insurance Code provides that no policy may be issued or renewed unless uninsured-motorist coverage is offered in an amount up to the bodily injury limits; section 143a—2(2) provides that the named insured may elect or reject the offer of additional coverage as long as the uninsured-motorist coverage is maintained at the minimum level. Section 143a—2(3) provided that until July 1, 1983, any offer made under subsection 143a—2(1) must have included an offer of underinsured-motorist coverage to protect against those motorists whose bodily injury limits were insufficient to pay the claims of those they injured. Section 143a—2(4) provided that these policyholders could elect to purchase underinsured-motorist coverage up to the limits of their uninsured-motorist coverage. Section 143a—2(5) provides that after July 1, 1983, no policy can be issued or renewed unless underinsured coverage is included in an amount equal to the uninsured-motorist coverage where the uninsured-motorist coverage exceeds the statutory minimum; section 143a—2(6) provides that the insurance company may combine the two kinds of coverage.

Our courts have construed these sections of the Insurance Code together to hold that, where an insurance company fails to make an adequate, required offer of additional underinsured-motorist coverage, the policy will be reformed to include such additional coverage. (*Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 425; *Overbey v. Illinois Farmers Insurance Co.* (1988), 170 Ill. App. 3d 594, 600.) The inquiry in this cause involves how much of the logic of this line of cases, and the tests of the adequacy of an offer, may be applied to the uninsured-motorist coverage. This court has previously predicated its determination that an adequate offer of underinsured-motorist coverage was made on the finding that an adequate offer of uninsured-motorist coverage was made, because the proper level of the underinsured-motorist coverage is determined from the proper level of the uninsured-motorist coverage. (*Rutter v. Horace Mann Insurance Co.* (1989), 190 Ill. App. 3d 467, 477-78.) In *Rutter*, this court ruled that the offer for additional uninsured-motorist coverage suffered from the same defect as the offer for underinsured-motorist coverage because both lacked sufficient price information. (190 Ill. App. 3d at 478.) Thus, plaintiffs may assert that defendant made an inadequate offer concerning the uninsured-motorist coverage.

In *Cloninger*, our supreme court found that the legislature was concerned with soaring medical costs which often left injured parties only partially compensated for their injuries. (*Cloninger*, 109 Ill.

2d at 424.) Thus, the legislature intended that an "offer" mandated under section 143a—2(3) provide a policyholder with enough information regarding underinsured-motorist coverage to allow the holder to make an intelligent decision of whether such coverage, or additional coverage, should be selected or rejected. (109 Ill. 2d at 425.) An intelligent decision cannot be made unless an explanation of the coverage is supplied by the issuing insurance company. 109 Ill. 2d at 425.

In *Cloninger*, our supreme court adopted a four-part test to determine the sufficiency of an offer for the optional coverage required by section 143a—2. To satisfy the statute, an offer must (1) notify the insured in a commercially reasonable manner if the offer is not made in face-to-face negotiations; (2) specify the limits of the optional coverage without using general terms; (3) intelligibly advise the insured of the nature of the offer; and (4) advise the insured that the optional coverage is available for a relatively modest premium increase. (109 Ill. 2d at 425-26; *Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 553.) An offer must meet all four parts of the test to satisfy the requirements of the Code; an otherwise model offer may be insufficient if it fails to provide specific price information. *Watson v. Hartford Casualty Insurance Co.* (1990), 205 Ill. App. 3d 88, 94.

In the cause before the court, plaintiffs contend that defendant's offers did not specify the limits of the optional coverage as required by the statute and did not intelligibly advise them of the nature of the offered coverage. They contend that the first letter was sent after the policy was issued and that the other three letters did not specify the coverage required by the statute, that is, the level of their bodily injury coverage at 100/300, but rather the higher, proposed level of 250/500. Plaintiffs also argue that the letters did not convey sufficient information regarding the complicated nature of the offered coverage. See *Cloninger*, 109 Ill. 2d at 428; *Overbey*, 170 Ill. App. 3d at 603 (offer of " 'Did you know that you may now have uninsured motorist coverage in amounts up to your bodily injury limits. If interested, contact your agent' " held to be insufficient explanation of underinsured-motorist coverage); *Krska*, 162 Ill. App. 3d at 554.

We disagree that the proposals in the letters violated the fourth part of the test by failing to list the specific premium for uninsured-motorist coverage at the level of 100/300. The test requires specific proposals and a notice that the additional coverage is available at a modest cost. Defendant did make a specific offer, and the premiums listed with the offer were modest. For example, on August 8, 1985, plaintiffs could have increased their uninsured-motorist coverage from

15/30 for $6.50 to 250/500 for $18.40. The plaintiffs knew the limits for bodily injury coverage were 100/300. A customer could infer that lesser additional coverage would have lower additional premiums. Moreover, the letters told plaintiffs that they could choose all, some or none of the proposed changes. Thus, they could infer the uninsured-motorist coverage could be increased without increasing the bodily injury coverage. The offer does not need to state an all-inclusive list of optional coverages and their respective costs so long as it states the premium is modest. (*Krska*, 162 Ill. App. 3d at 555.) Also, in *Krska*, the offer notified the policyholder that he could either raise his uninsured-motorist coverage to equal his bodily injury limits or lower the uninsured-motorist coverage. (162 Ill. App. 3d at 554.) However, he was quoted the exact cost for increasing his uninsured-motorist coverage up to his bodily injury limits. 162 Ill. App. 3d at 554.

The fourth part of the test in *Cloninger* was adopted from the decision of the Minnesota Supreme Court in *Hastings v. Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849, 853, which stated that the test did not require that specific premium rates be quoted if the customer is told that substantially more coverage is available for only a small additional charge. (*See League General Insurance Co. v. Tvedt* (Minn. 1982), 317 N.W.2d 40, 42-43; *Holman v. All Nation Insurance Co.* (Minn. 1980), 288 N.W.2d 244, 250.) The Minnesota court was addressing a concern that the customer was seldom given enough information to make an intelligent decision about optional coverage and that even a customer who asks for the minimum coverage might decide to increase his limits if told that the additional protection was available at minimal cost. (*Tvedt*, 317 N.W.2d at 42.) The purpose of the test is to reassure an insured party that the proposed coverage is not expensive. *Rutter*, 190 Ill. App. 3d at 476.

Plaintiff contends that the explicit words of the statute require an offer in an amount up to the insured's bodily injury liability limits. Instead, defendant offered an amount in excess of the current bodily injury liability limits by offering an amount equaling the proposed, increased bodily injury limits. The statute requires that "insurers offer optional coverage in definite and specific terms in renewal policies and original policies so as to make effective *** the insured's clear power of acceptance of the additional coverage." (*Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 333; see *Cloninger*, 109 Ill. 2d at 425.) The *Tucker* court decided that, by the fact that the statute gives the customer the right to elect or reject the coverage, the customer had the power to decide whether the additional coverages, both uninsured and underin-

sured, should be accepted. (*Tucker*, 125 Ill. App. 3d at 334.) The Code requires insurers to offer the required coverage in clear and specific terms in renewal policies so that the policyholder has an effective and clear power to accept or reject the offer. (*Cloninger*, 109 Ill. 2d at 425; *Petersen v. Allstate Insurance Co.* (1988), 171 Ill. App. 3d 909, 913.) In *Petersen*, a coverage update was included in the mailing, describing how to accept or reject the offer. (171 Ill. App. 3d at 915.) In this cause, the defendant's letters do not empower the customer to elect the required amounts, the 100/300 limits, but instead put the burden on the customer to call the agent to discover the intermediate limits and then to elect or to reject them. Nevertheless, we do not believe that this excessive offer was not a meaningful offer. The letters did provide the customer with knowledge that increased coverage was available at modest prices. An "offer" does not have to be in the nature of a legal, contractual offer so long as specific information is communicated to the policyholder to make an offer meaningful. (*Tucker*, 125 Ill. App. 3d at 333.) Because the cases have recognized that an offer is sufficient even if it merely states the premium is modest, the cases imply that placing the burden on the customer to inquire further is acceptable, where an intelligible description of the available coverage is otherwise provided.

The trial court also found that the letters did not provide an intelligible description of the optional coverage as required by the third part of the *Cloninger* test. Defendant contends that no such description was necessary. The earlier cases dealing with the optional offers concern underinsured-motorist coverage, which was a protection not previously offered or known to consumers. The mere reference to "underinsured motorist coverage" may not convey a clear message to the uninitiated customer; the mere listing of an option without further explanation does not constitute a meaningful offer sufficient to enable the customer to assess why the offer should be carefully considered. (*Hastings*, 318 N.W.2d at 852.) The supreme court in *Cloninger* suggested a model offer which included a short description of the optional coverage, which concerned underinsured-motorist coverage. (*Cloninger*, 109 Ill. 2d at 428-29.) Plaintiff contends the defendant's offer was insufficient for failure to include similar language.

Defendant argues that uninsured-motorist description cannot be held to the same standards as underinsured-motorist description. Most automobile owners know the purpose of the uninsured-motorist coverage; they know of this State's attempt to alleviate the

problem of numerous drivers without insurance who cause accidents without the means to compensate the victims. Thus, the purpose and nature of the coverage is within the common knowledge of the public while underinsured-motorist coverage was not. Uninsured-motorist coverage has been a required element of automobile policies since 1967.

In addition, defendant argues that the customer is charged with knowing the terms of his own policy. (*Foster v. Crum & Forster Insurance Cos.* (1976), 36 Ill. App. 3d 595, 598.) James Orr, at his deposition, stated he would glance over his policies when he received them, but he did not recall reading the section regarding uninsured motorists, and he did not know whether he understood it at the time. Unlike that of the cases concerning underinsured-motorist coverage which involved a new kind of insurance, the uninsured-motorist coverage in this cause was part of the policy when the optional increases were offered. Courts in other cases have implied, in *dicta,* that this source of information is sufficient to satisfy the statute. (*Petersen v. Allstate Insurance Co.* (1988), 171 Ill. App. 3d 909, 913 ("Having been a policyholder since May 1, 1976, with uninsured motorist coverage from the outset, it would be reasonable to conclude that the Petersens are aware of the meaning of uninsured coverage"); *Tucker*, 125 Ill. App. 3d at 336 ("Nor can defendant now argue that the insured had a policy in his possession which explained underinsured coverage").) Plaintiffs may obtain missing information from another source. (*Rutter*, 190 Ill. App. 3d at 476.) Plaintiffs have not alleged the language of the policy was ambiguous or confusing. Thus, we determine that the plaintiffs in the cause before the court had sufficient information regarding the nature of the offered coverage to elect or reject the offer intelligibly.

The other reasons stated by the trial court for the deficiency of the offers are not persuasive. There was no reason for defendant to misstate the law by couching the proposals in the imperative. The statute does not require that customers must increase their coverage; it gives them the right to elect or reject the additional coverage. Whether existing coverage is inadequate is the customer's decision, and the insurance company need only explain the options. The legislature has provided a remedy to reduce the problem of policyholders having insufficient protection from underinsured and uninsured motorists. That remedy involves mandating minimum coverage in all policies and informing the consumer of the existence of increased coverage so that the consumer may get the

same protection he provides the public. The remedy chosen by the legislature does not require the consumer to purchase the increased coverage but requires only that the increased coverage be made available at a reasonable cost. The plaintiffs should have been aware of the nature of the coverage from their own policies. The letters recommended they increase the coverage, and the accompanying rate sheet showed that increased coverage was available at a modest cost. Defendant cannot be faulted for not making a "hard sell."

The ultimate disposition of this appeal depends on whether the trial court properly entered summary judgment. A motion for summary judgment should be granted if the pleadings, depositions and admissions on file, together with the affidavits, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (*Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 433-34; *Watson*, 205 Ill. App. 3d 88.) In this cause, there is no dispute regarding the receipt of the letters, their content or the content of the insurance policies, and these items contain all the information relevant to the cause of action. There is no genuine issue of material fact, and, in our view, defendant is entitled to judgment on count I as a matter of law. Thus, the trial court erred in granting plaintiffs' motion for summary judgment and denying defendant's motion.

For the above reasons, the order of the circuit court of Kane County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

DUNN and GEIGER, JJ., concur.