STEPHANIE HARRIS, Plaintiff-Appellant, v. ST. PAUL FIRE AND MA-
RINE INSURANCE COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—91—3434

Opinion filed February 22, 1993.

Cooney & Conway, of Chicago (James E. Ocasek, of counsel), for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Robert J. Franco, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Stephanie Harris sustained personal injuries on March 2, 1984, after being struck by an automobile driven by Dorothy Williams. Plaintiff's injuries occurred as she was about to reenter a parked vehicle owned by Universal Recording Corporation (Universal). Plaintiff had been a guest and passenger of a Universal employee.

Plaintiff filed a claim for underinsured motorists (UIM) benefits with Universal's insurer, defendant St. Paul Fire & Marine Insurance Company, which denied her claim. Plaintiff thereafter filed a one-count breach of contract action against defendant to obtain those benefits. Plaintiff appeals from a final judgment of the circuit court of Cook County which found her to be covered under defendant's policy; that defendant's UIM limits were implied in the amount of $30,000; and that defendant was entitled to a $15,000 setoff for plaintiff's receipt of that sum from Williams' liability insurer. Defendant has not cross-appealed from any of these findings. We affirm.

Because defendant has not appealed the circuit's court's finding that plaintiff was an insured under its policy, we take this fact as established. Consequently, we need not focus on how the accident occurred, but rather, the procedural development of this case.

Following the accident, plaintiff made claim against Williams' insurer, which paid plaintiff its full $15,000 liability limit to plaintiff. Plaintiff also notified defendant that she was making a claim under Universal's policy for "medical payments" and UIM benefits. Defendant subsequently tendered $1,000 to plaintiff under the policy's medical payments coverage. On August 13, 1985, plaintiff notified defendant of her intent to accept Williams' insurer's tender of $15,000. Defendant did not respond and refused to tender a copy of Universal's policy in effect at the time of the accident. On December 26, 1985, plaintiff filed the instant action.

Plaintiff's breach of contract claim alleges that she had been an occupant of a vehicle which defendant insured. At the time she was struck by Williams, plaintiff was about to enter the insured vehicle, which qualified her to be an "insured" under defendant's policy. Plaintiff alleged that she received $15,000 in benefits from Williams' in-

surer and that defendant has refused to pay her any UIM benefits. Plaintiff asserted that defendant's refusal amounted to a breach of contract.

Significantly, plaintiff's complaint contains no allegations that defendant failed to offer Universal increased uninsured (UM) and/or UIM benefits, or that the policy in question should be reformed to include UM/UIM benefits in the amount of the policy's bodily injury/liability limits, which are $500,000. Plaintiff has never sought to amend her complaint.

Defendant's amended answer admitted issuing a policy to Universal, but denied all material allegations of plaintiff's complaint. Defendant's affirmative defenses included one seeking to limit its exposure to the $30,000 UIM coverage less a setoff of $15,000.

Defendant subsequently moved for summary judgment. In this motion, defendant argued it was entitled to judgment as a matter of law because plaintiff could not maintain a breach of contract action against defendant absent contractual privity. Defendant alternatively argued that its liability under the UIM coverage was limited to the $30,000 UIM coverage limit, less a $15,000 setoff.

At the summary judgment hearing, the circuit court dismissed plaintiff's complaint *sua sponte* without prejudice on the basis that it was premature in that plaintiff had failed to seek arbitration of her UIM claim.

Plaintiff moved for a rehearing. Upon rehearing September 20, 1991, the court ruled orally that it was vacating its prior ruling, that plaintiff did not have to proceed to arbitration to preserve her rights; that plaintiff failed to allege that a proper tender of UM coverage had not been made; that UIM coverage was to be implied in the same amount as UM coverage, namely $30,000; that plaintiff was a covered party; and that defendant was entitled to a $15,000 setoff. The court's subsequent final order included all of its oral rulings except its arbitration finding and plaintiff's failure to allege an improper offer.

Plaintiff's notice of appeal seeks reversal of the circuit court's judgment that defendant's UIM exposure was $30,000. Plaintiff also seeks this court "to find that St. Paul failed to properly offer higher limits of coverage and hold the applicable limit to equal the limit of bodily injury coverage, or alternatively to remand the cause for trial on all issues." Defendant has filed no cross-appeal.

This case presents itself in an unusual posture. Plaintiff filed a breach of contract action, yet she now asks this court to view it as one seeking declaratory relief and reformation of the policy based upon defendant's alleged failure to offer higher limits of UM/UIM cov-

erage to Universal. We are thus faced with the issue of whether plaintiff's breach of contract theory of recovery encompasses a claim that defendant wrongfully failed to offer higher limits of UM and/or UIM benefits to Universal.

Only a generous judicial view of a breach of contract action will allow plaintiff to pursue, as part of that action, a claim that defendant failed to offer higher limits of UM and/or UIM benefits. The cases which have addressed these latter types of claims are declaratory relief actions seeking reformation of the policy to imply a higher level of UM and/or UIM coverage. These actions contain allegations of an improper offer of higher UM/UIM limits. (See *Taruc v. State Farm Mutual Automobile Insurance Co.* (1991), 218 Ill. App. 3d 51, 578 N.E.2d 134; *Bernier v. Transamerica Insurance Co.* (1991), 215 Ill. App. 3d 118, 574 N.E.2d 873; *Orr v. Illinois Farmers Insurance Co.* (1991), 210 Ill. App. 3d 1015, 569 N.E.2d 619; *Rutter v. Horace Mann Insurance Co.* (1989), 190 Ill. App. 3d 467, 545 N.E.2d 1381; *Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 515 N.E.2d 1304.) As noted, plaintiff's complaint is silent on the matter of improper offers.

Admittedly, a breach of contract action predicated on the wrongful withholding of insurance benefits necessarily requires a court to ascertain the meaning of the insurance policy. To this extent, a breach of contract action overlaps with a declaratory judgment action. However, the breach of contract action allows the court only to interpret the language as written. A declaratory judgment action which seeks reformation of the policy based on an improper UM/UIM offer goes well beyond this by invoking a court's equitable powers.

In this case, plaintiff should have amended her complaint once she discovered that defendant potentially failed to properly offer higher limits of UM and/or UIM coverages. Absent this amendment, plaintiff's action is limited to her breach of contract count and the limited relief such an action triggers.

Nor do we believe that defendant's conduct in this case somehow transformed this action into an "improper offer" case. Defendant's third and fourth affirmative defenses requested the circuit court to ascertain the available amount of coverage. The third defense argued that the coverage limit was $30,000 with a $15,000 setoff, while the fourth defense argued that if coverage exceeded $30,000, then plaintiff was required to arbitrate her claim.

■ In defendant's subsequent summary judgment motion, defendant argued it was entitled to judgment as a matter of law. In the supporting memorandum, defendant argued that it was entitled to judgment due to a lack of privity. Defendant made the following

alternative argument: "St. Paul seeks this Court to adjudge and declare the rights, duties and obligations of the parties, construing the St. Paul Policy, and declaring the applicable policy limits for the claim submitted by Plaintiff." Defendant did not raise the improper offer issue in any way in this memorandum.

Plaintiff's response to defendant's memorandum raised the issue of an improper offer. Plaintiff argued, as she does on appeal, that no offers of enhanced UM and/or UIM coverages were made at any time to Universal. Plaintiff accordingly asserted that defendant was not entitled to judgment in the amount of $15,000; thus, defendant's summary judgment motion should be denied. Defendant's reply asserted that the improper offer theory was a "red herring" not properly before the court.

We believe that, to the extent that defendant requested declaratory relief in its memorandum of law supporting its summary judgment motion, it did so only with respect to the policy limits and language as written. Defendant did not interject the improper offer issue, plaintiff did. Defendant replied that the improper offer issue was not properly before the court. Absent allegations within plaintiff's complaint that proper offers of UM/UIM coverage were not made, the circuit court was not faced with such an issue. Plaintiff, in short, is bound by her complaint and the contract theory of recovery it asserts.

■ Plaintiff next asserts that summary judgment was improperly entered because the deposition testimony of Blanche Hughes, an underwriter with defendant, created a genuine issue of material fact on the issue of whether the UM/UIM endorsement in the record is *in fact* the UM/UIM endorsement which governed at the time of plaintiff's accident. While the UM/UIM endorsement in the record bears the number 40136 and an edition date of July 1977, Hughes testified that this endorsement underwent revisions subsequent to its edition date in order to keep defendant's UM/UIM coverage compatible with Illinois law. Further, these revisions occurred internally, not externally. Thus, although the insured's policy showed endorsement number 40136 to be included, the insured's UM/UIM coverage was actually governed by a different endorsement which the insured never received.

We do not believe summary judgment is inappropriate based on Hughes' testimony. Two provisions of defendant's UM/UIM coverage are critical to this appeal. The first is the limits of such coverage. The second is the existence of a setoff for the $15,000 which plaintiff received from Williams' insurer. Regarding the former, plaintiff has in-

troduced no evidence that the UM/UIM *limits* of Universal's policy would have changed under these other endorsements. Thus, while the terms of the UM/UIM coverage might be different under these other endorsements, nothing in the record indicates that the limits would be other than the statutory minimum of $30,000.

Regarding the latter, the Illinois UIM statute makes a setoff *mandatory*. (See Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(3) ("The limits of liability for an insurer providing [UIM] coverages shall be the limits of such coverage, less those amounts actually recovered \*\*\*").) Statutory provisions applicable to contracts of insurance are deemed to form a part of such contract and must be construed in connection therewith; policy provisions in conflict with the statute are void. (*American Family Mutual Insurance Co. v. Baaske* (1991), 213 Ill. App. 3d 683, 572 N.E.2d 308.) Thus, even under the alleged different endorsements, defendant would be nevertheless entitled to a setoff. For these reasons, we do not believe that summary judgment was improperly granted based on the testimony of Blanche Hughes.

■ Plaintiff also raises the argument that endorsement No. 40136 does not provide UIM benefits and, thus, the endorsement is in violation of Illinois law. Consequently, Universal's UIM limits are not $15,000/$30,000, but equal to the bodily injury limits of $500,000/ $500,000. Defendant responds that its endorsement provides UIM coverage as well as UM coverage. Further, its UIM language tracks the definition of "uninsured motor vehicle" within section 143a—2(3) of the Insurance Code.

Endorsement No. 40136 provides in relevant part:
"Protection Against Uninsured Motorists Endorsement
* * *
What's an uninsured vehicle

We'll consider the following land motor vehicles or trailers to be uninsured vehicles.

Vehicles which at the time of an accident aren't insured or bonded for bodily injury liability in at least the amounts legally required where your covered auto is registered.

Vehicles which at the time of an accident are insured or bonded for bodily injury liability. And the insurance or bonds are for at least the amounts legally required where your covered auto is registered—but less than the limit of your coverage under this endorsement [$30,000]. When this happens this endorsement is excess insurance. We'll only pay a claim after all other liability insurance or bonds have been used up."

Section 143a—2(3) of the Illinois Insurance Code defines an "uninsured motor vehicle" as follows:

"For the purposes of this Act the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident." Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(3).

Plaintiff's arguments are rejected. Endorsement No. 40136 substantially tracks the definition of "underinsured motor vehicle" within the Code. The statutory definition provides in short that an underinsured motor vehicle is one having applicable liability limits which are less than the UIM coverage limits under the insured's policy. The endorsement in question provides substantially the same. Further, as previously noted, to the extent the endorsement omits statutory requirements or contains conflicting policy provisions, the policy will be read to conform to the statute. For these reasons, we find that endorsement No. 40136 provided UIM benefits.

■ We next address whether the circuit court awarded plaintiff the proper amount of insurance benefits. We believe it did.

The limit of endorsement No. 40136 is $30,000, and it clearly allows a setoff. Plaintiff does not dispute receiving $15,000. Thus, the amount awarded plaintiff is affirmed. We note, however, that the circuit court *implied* UIM limits of $30,000. Why the court did this is unclear in light of the policy's express grant of UIM coverage and the fact that *all* coverages provided by this endorsement had limits of $30,000. In any event, even though the circuit court erred in its method of obtaining the result, the amount awarded was nevertheless proper.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.